In re James P. WADDLE, Debtor.

POHL CONSTRUCTION COMPANY,
Plaintiff,

v.

James P. WADDLE, Defendant.

Bankruptcy No. 3–82–00273.
Adv. No. 3–82–0208.

United States Bankruptcy Court,
W.D. Kentucky.

Feb. 28, 1983.

Charles W. Hebel, Jr., Louisville, Ky., for defendant-debtor.

Ralph M. Allen, Louisville, Ky., for plaintiff.

## MEMORANDUM AND ORDER

G. WILLIAM BROWN, Bankruptcy Judge.

This matter came before the Court for hearing on October 25, 1982, with oral argument on November 15, 1982, on the complaint of Pohl Construction Company (Pohl), a creditor, by counsel, objecting to the discharge of the debtor pursuant to 11 U.S.C. § 727(c). At the above proceedings, the parties appeared both in person and by counsel, and extensive testimony was heard.

The plaintiff, by initial complaint filed May 28, 1982, alleged that the debtor held a right, title, or interest in some seven or eight tracts or parcels of real property, and that said interests were omitted from the schedules of the debtor pursuant to his petition for relief under Chapter 7 of the Bankruptcy Code, filed February 8, 1982. By amendment to the complaint, filed at the oral argument proceeding on November 15, 1982, the plaintiff added and deleted certain properties from the original listing. Thus, interests in the following properties are challenged:

(1) Units "I" and "J", Building # 1; Unit "D", Building # 4, Garden Park Townhomes Condominiums.

(2) Unit 2–C, Building 27, Timberwood Two Condominiums.

(3) Lot # 650, Watterson Woods Subdivision.

(4) Lot # 16, Stonebluff Subdivision.

(5) Albany Personal Care Home, Albany, Kentucky.

(6) Lots # 80 and # 100, Section 1, Jefferson Meadows Subdivision.

Mr. Edward L. Pohl, President of Pohl Construction Company, testified that he made a search of the conveyancing of deed records of the County Court Clerk of Jefferson County, Kentucky, in the summer of 1981, or approximately six (6) months prior to the filing of the petition by the debtor.

As a result of that search, it was the witness' belief that in the summer of 1981, the debtor and Charles D. Mattingly held record title as co-trustees to Unit J, Building # 1, Garden Park Townhomes; that the debtor held record title to Unit 2–C, Building 27, Timberwood Two Condominiums; that the debtor held record title to Lot # 650, Watterson Woods Subdivision; that the debtor held record title to Lot # 16, Stone Bluff Subdivision; and that it was the belief of the witness that the debtor was the owner of Lots # 80 and # 100 in Section 1 of the Jefferson Meadows Subdivision. The evidence relied upon by the witness regarding the Jefferson Meadows lots was the weekly edition of the Multiple Listings for Jefferson, Oldham, Bullitt, and Shelby Counties of the Louisville Board of Realtors for the week of January 19, 1982, wherein on pages 272 and 275 are listed

Lots # 100 and # 80, respectively, and indicating that the owner of those tracts is one Jim Waddle.

In explanation and rebuttal, the defendant Waddle testified that he is the duly authorized agent for Dr. Lee Heise who is the owner of the Jefferson Meadows tracts under a management agreement with the James P. Waddle Management Company. This agency relationship is revealed in the bankruptcy petition as "8. Property held for another person ... None. Manage eight houses and 20-unit apartments for Dr. Lee Heise, under name of James P. Waddle Management Co." Further testimony of the debtor and documentary evidence revealed that the Timberwood condominium was under a contract for deed to Robert C. Payne, signed and recorded on September 4, 1979, and Lot # 16, Stone Bluff Subdivision is under a Metro Real Estate Option to Robert R. and Patsy E. Davenport signed June 8, 1981, but unrecorded. Further, on April 5, 1981, Charles D. Mattingly and the debtor entered into an agreement dissolving their joint venture arrangement. Under this dissolution agreement, the debtor purportedly relinquished any equity that he might have had in Units "D" and "J" of the Garden Park Townhomes to Mattingly in consideration of certain obligations owing to Mattingly. Unit "J" of Garden Park is under Metro Real Estate Option to Anita M. Calvert, signed February 16, 1981, and unrecorded.

It should be noted that an agreed order was filed of record on April 20, 1982, terminating the stay as to Lot # 650 of Watterson Woods Subdivision. This order allowed Liberty National Bank and Trust Company to foreclose on the real estate as enforcement of its first mortgage lien. In that order the trustee in the case specifically renounces any interest in the real estate contending that the debtor has no equity in said property.

The debtor testified he was a fifty percent (50%) stockholder in a corporation holding title to the Albany Personal Care Home, that said property was mortgaged to Citizens Fidelity for $442,500.00 and had recently been transferred by a commissioner's sale in Clinton Circuit Court for less than $100,000.00. No proof was offered that debtor's fifty percent stock ownership represented any equitable value. It must therefore be presumed that the trustee in the administration of the estate had evaluated this asset and was satisfied that it had no value for the benefit of the unsecured creditors of the estate.

The plaintiff here brings his complaint under Section 727(c) of 11 U.S.C., which states:

(c)(1) The trustee or a creditor may object to discharge under subsection (a) of this section. (2) on request of a party in interest, the court may order the trustee to examine the acts and conduct of the debtor to determine whether a ground exists for denial of discharge.

However, from the evidence adduced, it is the opinion of the Court that the plaintiff's proof is directed toward a cause of action founded in either § 727(a)(2) or (a)(4).

11 U.S.C. § 727(a) provides in pertinent part:

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

.      .      .      .      .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account. . . .

11 U.S.C. § 727(a)(2), (a)(4).

To sustain an objection under 727(a)(2), the proof must show (1) that the

act complained of was done at a time subsequent to one year before the date of the filing of the petition; (2) the act was done with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under the Bankruptcy Code; (3) that the act was that of the debtor or his duly authorized agent; (4) that the act consisted of transferring, removing, destroying or concealing any of the debtor's property, or permitting any of these acts to be done. 4 *Collier on Bankruptcy,* ¶ 727.02[1] (15th Ed.1979).

Section 727(a)(2) provides that the act complained of must be done with intent to hinder, delay, or defraud such a creditor or officer. This intent must be an actual fraudulent intent as distinguished from constructive intent. However, it should be noted that the intent to prefer creditors is not a sufficient substitute for the intent to hinder, delay or defraud creditors. Neither is the making of a general assignment a ground for objecting to the granting of a discharge. (Citations omitted.) 4 *Collier on Bankruptcy,* ¶ 727.02[3] (15th Ed.1979); also see *In Re Adlman,* 541 F.2d 999 (2d Cir.1976).

In order to justify the refusal of discharge, there must have been more than a preferential payment or preferential transfer. If, under Section 727(a)(2), a transfer is relied on, it must be shown that there was an actual transfer of valuable property belonging to the debtor which reduced the assets available to creditors and which was made with a fraudulent intent. 4 *Collier on Bankruptcy,* ¶ 727.02[5] (15th Ed.1979); *Albinak v. Kuhn,* 149 F.2d 108 (6th Cir.1945).

A debtor who fully discloses his property transactions at the first meeting of creditors is not fraudulently concealing property from his creditors. *In Re Doody,* 92 F.2d 653 (7th Cir.1937); *Thompson v. Eck,* 149 F.2d 631 (2d Cir.1945).

Bankruptcy Rule 407 remains in effect under the Code and now governs regarding the burden of proof in cases such as this. The objector will no longer meet the burden of proof by showing to the satisfaction of the court "that there are reasonable grounds for believing that the debtor has committed" any of the acts which would prevent the debtor's discharge. Under Rule 407, the plaintiff has the burden "of proving the facts essential to his objection." Accordingly, the plaintiff will be required to go beyond a showing of "reasonable grounds" and adduce proof of the facts which will establish that the debtor has committed the act charged before the burden of going forward with the evidence will shift to the debtor. 4 *Collier on Bankruptcy,* ¶ 727.03 (15th Ed.1979); also see *In Re Gorman,* 14 B.R. 776 (Bkrtcy., N.D.Ala. 1981).

A debtor may be denied a discharge by virtue of Section 727(a)(4) of the Code if he "knowingly and fraudulently, in or in connection with the case made a false oath or account." However, the false oath must have related to a material matter. Testimony as to property, which can have no bearing upon the estate's condition, is not material in a proceeding under the Code. Matters so trivial in nature as to have but little effect upon the estate and upon creditors have been treated as immaterial. See, e.g., *Aronofsky v. Bostian,* 133 F.2d 290 (8th Cir.1943); *In Re Fischer,* 4 B.R. 517 (Bkrtcy., S.D.Fla.1980).

The false oath which is a sufficient ground for denying a discharge may consist of (1) a false statement or omission in the debtor's schedules, or (2) a false statement by the debtor at an examination during the course of the proceedings. The evidence must be definite and certain to the effect that the property omitted should have been scheduled as part of the debtor's assets. Generally speaking, a debtor who, without fraud, omits from his sworn schedules property of no value is not guilty of making a false and fraudulent oath. Omission of property of trivial value sometimes has been treated as immaterial. Further, an omission of property from verified schedules may be both a false oath and a concealment. 4 *Collier on Bankruptcy,* ¶ 727.04[1] (15th Ed.1979).

The total proof offered to support the complaint relates to certain property allegedly owned some six months prior to the filing of the petition. In response thereto, the debtor gave proof as to the circumstances and/or disposition of the property between the time frame which was the focus of the complaining creditor and the date the petition for relief was filed. The debtor having satisfactorily offered explanation as to the property questioned, Pohl retains the burden of proof that (1) the explanation offered is without merit, or (2) that the creditors have been hindered, delayed or defrauded by the debtor's actions. Here, the creditor has offered no additional evidence or challenge to debtor's response, nor has the debtor's bankruptcy estate been reduced in value according to debtor's proffered testimony.

In the instant case, applying the law to the evidence adduced, it is the opinion of the Court that the plaintiff has failed to sustain its burden of proving the facts essential to its objection under either § 727(a)(2) or § 727(a)(4). Here, there may have been a preferential transfer. However, a cause of action for such preference rightfully belongs to the trustee as representative of the unsecured creditors of the estate and not to the specific judgment creditor herein. Further, it appears that the trustee was aware of the circumstances of this case and did not feel that a preference action was warranted.

This Memorandum and Order constitutes Findings of Fact and Conclusions of Law pursuant to Rule 752, Rules of Bankruptcy Procedure.

WHEREFORE, in view of the foregoing and the Court being otherwise sufficiently advised,

IT IS ORDERED AND ADJUDGED that the plaintiff's complaint objecting to discharge pursuant to § 727(c), 11 U.S.C., be and the same hereby is dismissed. This is a final order.