**In re Beatrice Rebecca LAWSON, Debtor.**

**Beatrice Rebecca LAWSON, Appellant,**

v.

**Carl HUGHES, Appellee.**

BAP No. CC–95–1774–VHM.

Bankruptcy No. LA92–36863 BR.

Adv. No. LA92–04734 BR.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 17, 1996.

Decided March 1, 1996.

Andrew F. Leoni, Los Angeles, CA, for Appellant.

Patrick G. Vastano, Los Angeles, CA, for Appellee.

Before: VOLINN, HAGAN, and McKEAG,[1] Bankruptcy Judges.

### *OPINION*

VOLINN, Bankruptcy Judge:

### OVERVIEW

Immediately after a jury verdict against her in a state court civil suit, the debtor recorded a deed of trust on her personal residence in favor of her mother which over-encumbered the property. She subsequently borrowed money from a third party, and secured the loan against the same property by subordinating her mother's deed of trust. She filed a bankruptcy petition more than one year later. The judgment creditor objected to discharge pursuant to 11 U.S.C. § 727(a)(2)(A). The bankruptcy court found the transfer was part of a scheme to conceal property from creditors, and the debtor's discharge was denied. On the debtor's appeal to the BAP, the order was remanded for clarification of the court's findings. The court clarified its findings and reaffirmed its earlier order. The debtor once again appeals. We now AFFIRM.

### FACTS AND PROCEEDINGS BELOW

Appellant, Beatrice Rebecca Lawson, an attorney, represented appellee Carl Hughes in a personal injury lawsuit for damages arising out of an industrial accident. Hughes' lawsuit was dismissed, and he sued Lawson for malpractice. On January 7, 1991, a jury awarded Hughes a judgment of $750,000. (The judgment amount was reduced to $420,000 on March 26, 1991). Also

on January 7, Lawson recorded a deed of trust in favor of her mother for $350,00 on her personal residence (referred to below as the Edgemar residence). At the time of this transaction, the Edgemar residence was worth $300,000, and was encumbered with a deed of trust in favor of Great Western Savings & Loan to secure a loan balance of some $58,000. Thus, equity of only some $242,000 supported the $350,000 deed of trust.[2]

Some time between January and April of 1991, Lawson borrowed $175,000 from the Elsam Company, a private lender, granting Elsam a third deed of trust on the Edgemar residence. Lawson's mother subordinated her deed of trust to Elsam's; thus, according to the figures provided to the trial court, the subordinated deed of trust secured only some $67,000 of equity in the property.

On July 9, 1992, more than one year after these events, Lawson filed a chapter 7 petition. Hughes objected to Lawson's discharge. After a bench trial, the court denied the debtor's discharge, and, after the court denied her motion for reconsideration, the debtor appealed to the BAP.

The bankruptcy court ruled that the transfer of the deed of trust constituted a continuing concealment of the debtor's property from her creditors. The nature of the concealment was not evident on the record, however, causing the court's comments to appear premised on an erroneous perception of the law. Pertinently, the court seemed to have considered that the transfer *per se* constituted a continuing concealment of assets, despite the uncontested fact that it was immediately recorded in the public records more than one year prior to filing of the petition for relief. *See* Memorandum, BAP No. CC–93–2158–VMeO (filed January 30, 1995). Accordingly, a panel of the BAP concluded that there was "sufficient ambiguity in the record indicating that the court was not fully explic-

---

1. Hon. Jane Dickson McKeag, Bankruptcy Judge for the Eastern District of California, sitting by designation.

2. On January 8, 1991, one day after the Hughes' verdict, Lawson and her brother each recorded a quit-claim deed of their interests in a second

parcel of real property (referred to as the Gramercy property). Hughes attacked both transfers in his objection to discharge and proceeded in state court to avoid both. The bankruptcy court expressly excluded consideration of this second transfer when ruling on the debtor's discharge.

it." *Id.* The panel remanded the matter for clarification of the court's findings.

On remand, the court reaffirmed its prior ruling and elaborated its reasoning in a "Memorandum and order" (the "Memorandum"). The Memorandum focuses on the debtor's loan from Elsam and the subordination of her mother's deed of trust as evidence that the transfer was a sham, with the debtor retaining a secret benefit in the form of use and control of the property. The Memorandum states:

> But it is her mother's subordination that gives proof to our conclusion that Ms. Lawson's transfer to her mother was a continuing concealment of Ms. Lawson's true interest in the residence. Ms. Lawson derived an equitable benefit by being able to use her residence for collateral for a new loan, free and clear of her mother's supposed interest in the residence, the grant of which interest had overencumbered the property. This is sufficient under the preponderance of evidence standard to establish a continuing concealment. Where a plaintiff can prove that a debtor retained control over property to the extent that she was able to use it as collateral by having family members subordinate supposedly valid and enforceable interests, it is appropriate to deny the debtor a discharge under the theory of continuing concealment.

Memorandum and order at 4.

The debtor once again appeals.

## STANDARD OF REVIEW

■ When the bankruptcy court denies a debtor's discharge, a finding that the debtor acted with the intent to hinder, delay or defraud his creditors is reviewed for clear error. *In re Adeeb,* 787 F.2d 1339, 1342 (9th Cir.1986). So too are findings that the debtor transferred or concealed assets. The bankruptcy court's conclusions of law are reviewed *de novo. Id.*

3. The court's original order found that the transfer was concealed from creditors. This was er-

## ISSUE PRESENTED

Whether the court's finding was clearly erroneous that the debtor concealed assets within one year before the date of filing the petition for relief with the intent to hinder, delay, or defraud a creditor.

## DISCUSSION

As pertinent to the issue on appeal, § 727 states:

> (a) The court shall grant the debtor a discharge, unless—
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor ... has ... *concealed—*
>
> > (A) property of the debtor, *within one year before the date of the filing of the petition.*

11 U.S.C. § 727(a)(2)(A) (emphasis supplied).

■ Section 727 "is the heart of the fresh start provisions of the bankruptcy law." H.R.Rep. 595, 95th Cong., 1st Sess. 384 (1977); S.Rep. 989, 95th Cong., 2d Sess. 98 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5884, 5963, 6340; *In re Rosen,* 996 F.2d 1527, 1531 (3rd Cir.1993). As such, it is to be construed liberally in favor of the debtor and strictly against the objector. *Id.; In re Adeeb,* 787 F.2d at 1342.

■ An objection to discharge under § 727(a)(2)(A) is comprised of two elements: 1) a disposition of property, such as transfer or concealment, and 2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act disposing of the property. Both elements must take place within the one-year pre-filing period; acts and intentions occurring prior to this period will be forgiven. *Rosen,* 996 F.2d at 1531.

■ Granting of security for a debt is a transfer under the Bankruptcy Code. *See* § 101(54) (transfer includes every mode of disposition of property or an interest in property). Thus, the debtor's grant of a deed of trust on the Edgemar residence to her mother constitutes a transfer of property for the purposes of § 727(a)(2). The parties agree that the transfer at issue took place and also agree it was recorded more than one year prior to the filing of the petition.[3]

ror: the recording of the transfer precludes a

■ Pursuant to the one-year time limitation in § 727(a)(2)(A), the deed of trust alone could not serve as a basis for denying the debtor's discharge. The court accepted that the debtor's mother was a creditor and that the deed of trust, although preferential, was not necessarily a fraudulent transfer. This finding is not necessarily pertinent to the question of continuing concealment. The question presented is whether the transfer could serve as a basis for a concealment of property within the one year prior to filing of the petition.[4]

■ Under the "continuing concealment" doctrine, a transfer made and recorded more than one year prior to filing may serve as evidence of the requisite act of concealment where the debtor retains a secret benefit of ownership in the transferred property within the year prior to filing. *See In re Olivier*, 819 F.2d 550, 555 (5th Cir.1987) (citing and discussing cases).

For example, in *Olivier*, debtor spouses, when faced with liability in a serious personal injury lawsuit, transferred title to their home to the wife's mother and properly recorded the transfer some seven years prior to filing their petition. Debtors continued to live in and maintain the property up to filing their petition. The bankruptcy court found that the facts demonstrated the debtors retained a secret beneficial interest in the legally transferred property which constituted a continuing concealment of the property interest from creditors within the year prior to the filing of the petition such that discharge was denied. Thus, where evidence demonstrates that, despite an ostensible transfer of property, the debtor retained a secret interest that could be realized by her creditors, such a sham transaction would suffice to deny her a discharge.

■ To some extent, the debtor views the issue as one of law; her argument focuses mainly on the timing of the transfer. The question of continuing concealment, however, is based not on timing, but on the reality of the transfer between the parties. The debtor does not attempt to overturn the court's finding on the basis of credibility of the witnesses. Rather, the debtor contends that she granted the deed of trust based on the debt she owed to her mother, which was of reasonably equivalent value. As indicated above, this reasoning misses the point that a debtor can conceal assets by transferring them to a cooperative creditor so long as the transfer allows the debtor to retain a secret benefit.

Evidence was adduced below that allowed the court to infer that the debtor retained and concealed from her creditors a secret benefit in regard to the deed of trust. It is undisputed that at some point after creating the lien, Lawson borrowed money from Elsam, the private lender, and her mother subordinated her deed of trust to Elsam's. Although the debtor could allege that her mother generously and intentionally deferred her own rights in the property in favor of her daughter's interests, the court permissibly could infer that Lawson retained a secret property interest in the property superior to her mother's lien. The debtor does not fully and fairly address the question whether she retained control over the residual equity in the property despite the ostensible transfer.[5] The debtor does not discuss the Elsam transaction or its implications.

The debtor also admitted to taking charge of her mother's affairs. Her mother's testimony supports this admission. This relationship supports the court's finding that Lawson

finding of concealment. This error, however, was harmless.

4. Although the court determined that the mother was a creditor, it never expressly determined the amount of her debt. The issue is of marginal relevance. Even if the debtor was indebted to her mother for the full amount of the deed of trust, the transfer could have been a sham nevertheless, with the consent of the transferee.

5. The debtor does not assert that no equity remains in the property which could be concealed

from creditors by virtue of her mother's deed of trust. As noted above, the record states that the residence had an ostensible fair market value of $300,000. The senior lien and Elsam's lien together encumber only some $233,000, leaving $58,000 value in the property. Creditors cannot reach this equity because it is encumbered by the mother's deed of trust, which the court found the debtor had the power to subordinate at will for her own purposes.

had a free hand to act with the property for her own benefit. Although Lawson testified that she acted with the interests of her mother and other family members in mind, the court was entitled to find the deed of trust to be a device to hinder Hughes.[6]

## CONCLUSION

The court's findings and conclusions on remand comport with the evidence presented and the law. The debtor's subordination of her mother's deed of trust in favor of Elsam allowed an inference to be made that the debtor retained a secret benefit in the residual equity in the property purportedly encumbered by the deed of trust which constituted a continuing concealment of assets. Appellant had the burden of demonstrating that the court made a clearly erroneous factual finding and has not done so. The order denying discharge is AFFIRMED.

---

**6.** That the Elsam lien was granted more than one year prior to the filing of the petition (between January and April of 1991) does not affect its evidentiary value as to Lawson's retained inter-est. The act of subordination was not the act upon which discharge was denied; it merely serves as inferential evidence that Lawson retained a secret benefit in the property.