In re Robert B. BEAUCHAMP, Debtor.

**Robert B. Beauchamp, Appellant,**

v.

**Clinton M. Hoose, Jr., Appellee.**

BAP No. CC–98–1373–BKMe.

Bankruptcy No. SA 96–15894 JR.

Adversary No. SA 96–02070 JR.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 20, 1999.

Decided July 30, 1999.

Katherine Windler, Tilsdale & Nicholson LLP, Los Angeles, CA, for Robert B. Beauchamp.

Richard G. Heston, Heston & Heston, Newport Beach, CA, for Clinton M. Hoose, Jr.

BEFORE: BRANDT, KLEIN, and MEYERS, Bankruptcy Judges.

## OPINION

BRANDT, Bankruptcy Judge.

Appellant Robert B. Beauchamp and his ex-wife Melinda were jointly liable to appellee, Clinton M. Hoose, Jr., Melinda's father, for approximately $200,000. The ex-wife petitioned for relief under chapter 13 [1], filing a plan which will, if completed,

---

**1.** Absent contrary indication, all chapter and section references are to the Bankruptcy Code, 11 U.S.C., and all "Rule" references are to the Federal Rules of Bankruptcy Proce-

discharge 99% of her obligation. Appellant filed his chapter 7 petition five days later. The trial court determined that he had transferred approximately $10,000 with intent to hinder or delay creditors, barring discharge pursuant to § 727(a)(2)(A). We AFFIRM.

## I. FACTS

During the course of their marriage and his legal education, Beauchamp and Melinda borrowed money from her father. The couple executed a joint and several promissory note in his favor for $158,000 in January of 1988, which required no payments until the end of 1998. As of 19 December 1993, the balance was over $200,000.

In 1994, Beauchamp initiated divorce proceedings against Melinda. The decree, entered in May of 1995, made each responsible for one-half of the debt to Hoose, but left each secondarily liable for the other's share. Beauchamp then married Mynette Dufresne, an attorney, three months later.

In March of 1996, Mynette opened a bank account for the purpose of depositing checks payable to appellant. The account was in her name alone, and she was the sole signatory on the account, but the two understood that the money was his.

Melinda filed her chapter 13 in May of 1996. Although still pending, it appears that her plan will pay at most a minuscule portion of her obligation on the note to Hoose. Assuming she completes her plan, Melinda will be discharged from that obligation; absent discharge, Beauchamp will be liable for virtually the entire amount.

In the two months between the opening of the account and Beauchamp's bankruptcy filing (five days after Melinda's), he endorsed checks totaling $14,776.85 to Mynette, which she then deposited in the account. The balance was $10,935.20 when Beauchamp filed for relief. He did not disclose the account on his schedules.

On 5 June 1996, Hoose noticed Beauchamp of his intent to seek Rule 2004 examinations of both him and Mynette. On 10 June the court ordered the examinations, and both were served with orders for examination and to produce documents. On 27 June, Beauchamp amended his schedules B, C, D and F to include, among other things, the account. The section 341 meeting of creditors was held 3 July, and in October 1996, Hoose filed the instant complaint, objecting to Beauchamp's discharge.

The bankruptcy court dismissed one cause of action on summary judgment and another at trial, but found appellant's failure to disclose the account evidenced his intent to hinder or delay creditors, and denied his discharge. This appeal followed.

## II. ISSUES[2]

A. Whether the court erred in finding intent to hinder or delay; and

B. Whether the court erred in concluding that appellant's amending of his schedules before the first meeting of creditors, but after notice of the impending Rule 2004 examination, did *not* "purge" his failure to disclose.

## III. STANDARDS OF REVIEW

We review the bankruptcy court's findings of fact for clear error, and its conclusions of law de novo. *United Student Aid Funds, Inc. v. Pena (In re Pena)*, 155 F.3d 1108, 1110 (9th Cir.1998). A finding that a debtor acted with intent to hinder, delay or defraud his creditors is reviewed for clear error. *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir.1997).

A factual finding is clearly erroneous if the appellate court, after reviewing the record, has a definite conviction that a mistake has been made. If two views of

dure. "FRCP" references are to the Federal Rules of Civil Procedure.

**2.** Beauchamp raised another issue in his brief, that there was no transfer, but conceded that point at argument.

the evidence are possible, the trial judge's choice between them cannot be clearly erroneous. Findings of fact based on credibility are given particular deference by reviewing courts. *Anderson v. Bessemer City,* 470 U.S. 564, 573–575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

Where "the historical facts are established; the rule of law is undisputed, ...; and the issue is whether the facts satisfy the legal rule[,]" it is a mixed question of fact and law, reviewed de novo. *Murray v. Bammer (In re Bammer),* 131 F.3d 788, 792 (9th Cir.1997).

## IV. DISCUSSION

■ While "Section 727 'is the heart of the fresh start provisions of the bankruptcy law[,]' " *Lawson v. Hughes (In re Lawson),* 193 B.R. 520, 523 (9th Cir. BAP 1996), *aff'd,* 122 F.3d 1237 (9th Cir.1997) (citations omitted), and must be construed liberally in favor of the debtor and strictly against the objector, *First Beverly Bank v. Adeeb (In re Adeeb),* 787 F.2d 1339, 1342 (9th Cir.1986), and while bankruptcy courts are reluctant to deny a discharge absent a persuasive showing, still, the burden of proof is a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 284, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

> Section 727(a)(2)(A) provides that
>
> (a) [t]he court shall grant the debtor a discharge, unless ...
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with the custody of property under this title, has transferred ... or concealed ...
>
> (A) property of the debtor, within one year before the date of filing of the petition....

That the transactions in question occurred within a year of filing is not in dispute. Appellant urges us to find that the trial court erred in finding he intended to hinder or delay creditors, and that, despite his disclosure and amendment of his schedules, his behavior still warranted the denial of his discharge.

■ Beauchamp first suggests that the court erred in finding Hoose and Melinda creditors. He asserts that he was current on support payments, nondischargeable anyway, and that his obligation to Hoose was still a year from maturity when he filed. These arguments fail: § 101(10) defines "creditor" simply as an entity with a claim against the debtor arising at or before the petition, and § 101(5) defines "claim" to include both those contingent and those not yet matured. Further, the Ninth Circuit has long held a creditor's lack of injury irrelevant for denial of discharge in bankruptcy. *Adeeb,* 787 F.2d at 1343; *Duggins v. Heffron,* 128 F.2d 546, 549 (9th Cir.1942).

### A. *Evidence of Intent:*

Beauchamp admitted in direct examination, and again in his opening brief, that he intended to conceal his assets from his ex-wife and her father. He asks us to condone his concealment because he "perceived a pattern of improper harassment" by Melinda and Hoose, but cites no authority for the premise that concealment of assets is justifiable where the creditors engage in harassing behavior. Rather, he argues that, to the extent he concealed assets to thwart harassment, his intention was not to hinder or delay. Appellant suggests that the record "is replete with undisputed evidence" of actual harassment; hence, his argument is that the record does not support the factual finding.

Although it is evident from the record that Melinda's father forthrightly disapproves of his former son-in-law, Beauchamp's argument reveals that what he perceives the most harassing aspect of their behavior is their determination that he pay the debt to Hoose. Notwithstanding that Melinda emerged from the divorce with equal liability to Hoose, appellant suggests that her chapter 13, partly funded by Hoose, which will potentially shift

virtually the entire liability to him, "establishes the lengths to which appellee and [Melinda] would go to harm appellant."

■ The many aspersions Beauchamp directs at his former spouse and her father do not negate the bankruptcy court's finding of his actual intent. That he sought haven from untoward behavior, and that he intended to hinder or delay, are not mutually exclusive. Even were they, where two views of the evidence are possible, as here, we cannot hold the trial court's view clearly erroneous, and the trial court found specifically that "BEAUCHAMP did not deliver the funds in the El Dorado Account to MYNETTE for the purpose of thwarting a perceived pattern of improper harassment by HOOSE or MELINDA." The finding was not clearly erroneous: "undisputed" or not, the bankruptcy judge was entitled, and is indeed enjoined, to evaluate the credibility of the witnesses and to determine whether or not he believed their testimony.

In his reply brief, appellant raises two further arguments. First, he cites *Gillickson v. Brown (In re Brown)*, 108 F.3d 1290 (10th Cir.1997), for the premise that, where a business purpose exists, and the funds in question are reasonably used and not squandered, then what would otherwise appear to be a transfer with fraudulent intent may yet be excused, and the debtor discharged. The record does not reveal whether this argument was offered at trial, and so it may not be properly before us. Nonetheless, it is also without merit: the trial court in *Brown* identified several badges of fraud indicating fraudulent intent. Among those was the debtor's granting of a security interest in a tangible asset several days before filing. The Tenth Circuit reversed the bankruptcy court's finding of fraud, noting all the circumstances of the transaction must be examined: "The granting of a security interest in his only unencumbered asset in order to obtain much needed capital for his businesses, which were his sole source of income, does not evince fraud[,]" and, where "[t]here was no evidence that the money was not reasonably used or that it was squandered[,] [i]ndicia of fraud are totally lacking." 108 F.3d at 1293 (citations omitted).

■ Beauchamp urges the Panel to acknowledge the legitimate business purpose of the account (to fund his fledgling solo practice), and to adopt the Tenth Circuit exception. He overlooks at least two aspects which distinguish his case from *Brown*. First, the Tenth Circuit distinguished between transferring title and granting a security interest, stressing that "[t]here is little question that if an individual transfers title of an item but continues to exercise dominion over it, that fraud could be inferred." 108 F.3d at 1293. This is exactly what Beauchamp did.

Second, highlighting that the debtor there had never attempted to hide the subject transaction, and that he had recorded the loan on his schedules, the *Brown* court remarked that "we believe the inference of fraudulent behavior flowing from a concealment is greater than from a transfer...." 108 F.3d at 1293 n. 1. Where the subject transaction involved secreting funds, as here, the *Brown* court's analysis would have been less favorable.

Appellant next challenges the bankruptcy court's finding of intent to hinder or delay. He argues that the court failed to "look to all of the facts and circumstances to determine whether an improper intent can be inferred," as directed by *Adeeb*, asserting that the finding that the undisclosed account evidenced intent to hinder or delay is inconsistent with the conclusion that Beauchamp's failure to disclose the account on his schedules was not fraud for the purposes of § 727(a)(4).

■ That the court found a lesser affront to creditors than fraud indicates thoroughness and particularity, rather than error. While the three disjunctive intent elements of § 727(a)(2)(A) are distinct, there is inevitably some overlap: fraud is the most severe, but hindrance or

delay is sufficient. Beauchamp has offered nothing to give us a firm conviction that the court's findings were erroneous.

### B. *Efficacy of Disclosure:*

■ "[T]wo elements comprise an objection to discharge under § 727(a)(2)(A): 1) a disposition of property, such as transfer or concealment, and 2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act of disposing of the property." *Lawson,* 122 F.3d at 1240. Here, the bankruptcy judge found both elements. In other circuits that would end discussion, but not in the Ninth. *Compare Martin v. Bajgar (In re Bajgar),* 104 F.3d 495 (1st Cir.1997) (unequivocal statutory language precludes broader reading); *Davis v. Davis (In re Davis),* 911 F.2d 560 (11th Cir.1990) (per curiam) (same); *with Adeeb,* 787 F.2d at 1345 ("transferred" means "remain[ing] transferred. . . .")

Appellant argues that, because he disclosed his clandestine account before the first meeting of creditors and amended his schedules accordingly, the bankruptcy court erred in barring his discharge. In his view, *Adeeb* directs courts in this circuit to clear repentant debtors, setting the deadline for repentance no earlier than the first meeting of creditors.

A debtor who first foils creditors by secreting assets, and then repents, pits the fundamental "fresh start" purpose of the Code, requiring liberal construction in favor of the debtor, against the "clean hands" maxim. *See, e.g., Bajgar,* 104 F.3d at 498 n. 1 (although reasons for barring discharge must be substantial, " '[o]n the other hand, the very purpose of certain sections of the law, like 11 U.S.C. § 727(a)[ ], is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs.' ") (quoting *Boroff v. Tully (In re Tully),* 818 F.2d 106 (1st Cir.1987)). *Adeeb* considered a relatively narrow fact pattern and came out in favor of "fresh start." We must decide to what extent, if any, *Adeeb* applies to the present facts.

Mr. Adeeb, a businessman, had financial difficulties, and on the advice of a lawyer unversed in bankruptcy, transferred substantial assets to cooperative friends and associates for no consideration. He then had the good fortune to come into contact with bankruptcy counsel, who convinced him to undo his transfers. He started to recover the conveyed property, then convened a meeting with his creditors, at which he explained the error of his ways, and his efforts to redeem the transfers. A handful of his creditors, apparently more alarmed by the transfers than assuaged by the recovery, filed an involuntary petition against him, and then proceeded to argue that § 727(a)(2)(A) should bar his discharge. The bankruptcy court found for the creditors, the BAP affirmed, and the Ninth Circuit reversed.

First, the Circuit reiterated the "twofold purpose" of bankruptcy law: to distribute assets equitably, and "to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh. . . ." 787 F.2d at 1345 (quoting *Williams v. United States Fidelity & Guaranty Co.,* 236 U.S. 549, 554–55, 35 S.Ct. 289, 59 L.Ed. 713 (1915)) (other citations omitted). The court then announced that "both these purposes are served by reading 'transferred' in § 727(a)(2)(A) to mean 'transferred and remained transferred.' " The court explained that such a reading permits an honest debtor to undo mistakes, encouraging recovery of improperly transferred assets, while otherwise the statute would provide a disincentive to recover assets. Listing the harms inherent in such a disincentive, the court then proclaimed, "[i]f possible, these results should be avoided. They are avoided by reading 'transferred' in section 727(a)(2)(A) to mean that the property transferred within one year of bankruptcy must remain transferred *at the time the bankruptcy petition is filed."* 787 F.2d at 1345 (emphasis added).

This sweeping exception was not enough for Mr. Adeeb, who, although proceeding in good faith, had yet to recover fully his fraudulent transfers at the time of the involuntary petition. The Ninth Circuit ultimately held that "a debtor who has disclosed his previous transfers to his creditors and is making a good faith effort to recover the property transferred at the time an involuntary bankruptcy petition is filed is entitled to discharge of his debts if he is otherwise qualified." 787 F.2d at 1346. The court must determine that the debtor has *both* 1) disclosed his previous transfers *and* 2) that he is making a good faith effort to recover the property transferred "*at the time the involuntary petition is filed[,]* " and he "must actually recover the property within a reasonable time." 787 F.2d at 1346. In cases of voluntary petitions, both disclosure *and* recovery must occur by filing. *See Najjar v. Kablaoui (In re Kablaoui),* 196 B.R. 705, 709 (Bankr.S.D.N.Y.1996); *Bajgar,* 104 F.3d at 500.

Beauchamp stresses that he had disclosed his secret fund by the time of the meeting of creditors, and urges us to extend the grace period to the § 341 meeting, so long as the schedules are properly amended. A loose reading of *Adeeb* could conceivably support this view: the court noted its conclusion would be consistent with cases "stat[ing] that a debtor who fully discloses his property transactions at the first meeting of creditors is not fraudulently concealing property from his creditors." (citing *Adeeb,* 787 F.2d at 1345) *In re Waddle,* 29 B.R. 100, 103 (Bankr. W.D.Ky.1983); 4 *Collier on Bankruptcy* ¶ 727.02[6][b] (15th ed.1985). *Waddle* did not so hold. A creditor there sought to bar discharge under several theories, the debtor denied having had an interest in the property at issue, and the court held that the creditor had failed to carry its burden. Reiterating elements of a cause of action under § 727(a), the court mentioned in passing that a debtor might avoid the penalty of the section by reporting concealed assets at the meeting of credi-

tors: at most, dicta of insignificant moment. *See Waddle,* 29 B.R. at 103.

The *Collier* edition cited by *Adeeb,* following reference to *Waddle,* supports the premise almost as little, listing only the same two cases cited in *Waddle: In re Doody,* 92 F.2d 653 (7th Cir.1937) and *Thompson v. Eck,* 149 F.2d 631 (2d Cir. 1945). In each, the lower court had found no fraudulent transfer, and the appellants assigned error to the courts' findings. In neither had the bankrupt attempted to conceal assets which were clearly property of the estate, nor did the property belong on the schedules. We note *Collier* has been revised, and the referenced text does not appear in the current edition. *See* 6 L. King, *Collier on Bankruptcy* ¶ 727.02, pp. 727–13 – 727–26.1 (15th ed. rev.1998).

One of our cases, *Baker v. Mereshian (In re Mereshian),* 200 B.R. 342, 346 (9th Cir. BAP 1996), notes that "the Ninth Circuit, in a comparable situation, has stated that a 'debtor who fully discloses his property transactions at the first meeting of creditors is not fraudulently concealing property from his creditors.' *Adeeb,* 787 F.2d at 1345 (quoting *In re Waddle,* 29 B.R. 100, 103 (Bankr.W.D.Ky.1983))." Nevertheless, *Mereshian* does not stand for the proposition that § 341 meeting confessions absolve fraud. Instead, the Panel there merely affirmed the bankruptcy court's finding of absence of intent to hinder, delay or defraud, noting in passing the debtor's candid acknowledgment of the transactions at the meeting of creditors. *Mereshian,* 200 B.R. at 346. *Mereshian* lends no more support to Beauchamp's argument than does *Adeeb.*

Appellant also urges *Garcia v. Coombs (In re Coombs),* 193 B.R. 557 (Bankr. S.D.Cal.1996), for the same premise. There, again, at the first creditors' meeting, the debtor discussed assets not listed on his schedules. Unlike *Doody* and *Thompson,* the assets in *Coombs did* belong to the estate, but that ends the similarity with appellant's position. The court there surveyed the debtor's bungling, and

found that none of it amounted to fraud. *Coombs,* 193 B.R. at 565. Here, the court found that, but for the threatened Rule 2004 examination, no disclosures would have been forthcoming.

■ The cases Beauchamp urges are quite distinct, either because they concern assets outside the estate, or because the courts found no indicia of fraud. None of them holds that disclosure of secreted assets at or before the § 341 meeting precludes finding intent to hinder, delay or defraud, and we will not extend *Adeeb* so far. The trial court took testimony, gauged the demeanor of the witnesses, and found that, but for the scheduled Rule 2004 examination, Beauchamp would not have disclosed the account. By the standard Beauchamp proposes, debtors who without compunction conceal assets and file fraudulent schedules, but who realize exposure is imminent and have the grace (or wit) to surrender before the § 341 meeting, would receive discharges. Ultimately, it would grant debtors time to gauge the aggressiveness of their creditors before committing to comfortable levels of divulgence.

Here, the court did not believe that good faith motivated Beauchamp's disclosure; rather, the bankruptcy judge found "the setting of the 2004 exam was the motivating factor behind the debtor's decision to file the amended schedules." We are not convinced that he erred.

## V. CONCLUSION

Beauchamp has not shown clear error in the finding that he intended to hinder or delay creditors, or any error in concluding that appellee and his daughter Melinda were creditors. The court narrowly, prudently, and correctly construed *Adeeb.* We AFFIRM.