IN RE: Darren D. PYNN, Debtor.

United States Trustee, Plaintiff,

v.

Darren D. Pynn, Defendant.

Case No.: 2:14–bk–28537–TD
Adv No.: 2:15–ap–01125–TD

United States Bankruptcy Court,
C.D. California,
**Los Angeles Division.**

Signed March 7, 2016

Trial Date: January 28, 2016, Time: 10:00 a.m., Courtroom: 1345

Melanie Scott Green, Office of the United States Trustee, Los Angeles, CA, for Plaintiff.

Nam H. Le, Jaurigue Law Group, Glendale, CA, for Defendant.

## MEMORANDUM DECISION

Thomas B. Donovan, United States Bankruptcy Judge

### INTRODUCTION

The United States Trustee (Plaintiff) filed a timely adversary seeking denial of Darren Pynn's (Debtor) discharge pursuant to 11 U.S.C. §§ 727(a)(4)(A) and 727(a)(2)(A). The adversary was tried on January 28, 2016, by written declaration and cross-examination of witnesses. At the conclusion of trial, the court announced a brief oral preliminary ruling denying Debtor a discharge based on the evidence. This memorandum supplements the court's ruling and is the final order of the court.

### FACTS

Debtor filed a chapter 7 bankruptcy petition on September 29, 2014. In his Schedule B, Debtor listed various personal assets including a 1966 Porsche 911 (Porsche) and multiple guitars and bicycles. Debtor's Schedule B reflected that the value of the Porsche was $5,000, the collective value of the guitars was $2,750, and the collective value of the bicycles was $2,600. In his Schedule C, Debtor claimed all these assets as exempt pursuant to California Code of Civil Procedure § 703.140(b). The exemptions claimed were almost dollar for dollar the amounts at which Debtor listed each of the above assets.

Prior to Debtor's chapter 7 petition, Wells Fargo Bank obtained a judgment against Debtor. The outstanding judgment totals about $185,000. Debtor testified that he attempted to settle with Wells Fargo for mere pennies on the dollar and that all his attempts failed.

On November 5, 2014, at the request of Wells Fargo, Bendis Companies performed an appraisal of Debtor's personal items listed above. According to the appraisal, the Porsche was in very clean condition with a few minor paint chips and minor upholstery damage and had a value between $20,000 and $45,000, depending on the amount of work required to achieve

road readiness. Collectively, Bendis Companies valued Debtor's bicycles at $7,710 and his guitars at $6,200. Based on these appraisals, the evidence established that Debtor significantly undervalued the Porsche, bicycles and guitars in his schedules.

The United States Trustee conducted a meeting of creditors (341(a) meeting) on November 7, 2014. Debtor testified under oath during the 341(a) meeting that he read and reviewed his bankruptcy papers carefully before he signed them and that his schedules and statement of financial affairs were true and correct. At the same time, he acknowledged that he needed to amend Schedule B to add four amplifiers, a drum set and one folding bicycle that he had previously overlooked.

During the 341(a) meeting, Brad Krasnoff (chapter 7 trustee) asked Debtor how he valued the Porsche. Debtor testified that $5,000 is what he paid for it and "what it's really worth to me at this point," adding, "... I figured I could just roll it out in the driveway, put a sign [on] it and [it was] what I could sell it for in a heartbeat." When questioned by the Wells Fargo attorney, Debtor testified that he valued the bicycles and guitars in the same way. Debtor's testimony at trial regarding valuation was consistent with his stipulated testimony as set forth in the Joint Pretrial Order. He valued all these assets based on "yard-sale" type or "quick sale" liquidation prices.

When further interviewed at his 341(a) meeting by Tayo Agboke (Agboke), the United States Trustee's bankruptcy auditor, Debtor admitted he had stated below-market values for the bicycles and guitars on his Schedule B. Debtor acknowledged that the bicycles would sell for between $5,350 to $7,450 on eBay, as opposed to the $2,600 represented in his Schedule B. Debtor likewise testified that the guitars, if sold on eBay, would sell for between $5,500 to $6,400, as opposed to the $2,750 represented his Schedule B.

Debtor filed an Amended Schedule B on November 18, 2014, to add the items that he failed to list previously, but Debtor left the values of his guitars, bicycles and Porsche unchanged.

The chapter 7 trustee ultimately sold the Porsche at an auction to Carr Acquisitions for $83,000 on January 14, 2015. An order approving the sale was entered on January 16, 2015. Later, the chapter 7 trustee agreed to sell the bicycles to Debtor for $5,450. In a separate transaction, the chapter 7 trustee sold the guitars and other musical equipment to Debtor for $3,900. An order was entered May 12, 2015, approving these sales.

The evidence demonstrates that Debtor significantly undervalued the Porsche. The auction sale proceeds prove that Debtor grossly undervalued the Porsche. Debtor's Schedule B and Amended Schedule B put the value of Porsche at $5,000, which is $78,000 less than the sale price at auction. The auction generated 1,560% more than the value Debtor stated.

The evidence shows that Debtor undervalued the bicycles. On his Amended Schedule B, Debtor valued the bicycles at $2,600, which is $2,850 less than the price at which Debtor himself later re-purchased the bicycles from the bankruptcy estate. As stated earlier, Debtor admitted at the 341(a) meeting that the bicycles had a total value of approximately $5,350 to $7,450, "if marketed."

The evidence shows that Debtor undervalued the guitars. On his Amended Schedule B, Debtor listed the guitars and other musical equipment as having a total value of $2,750, which is $1,150 less than the price at which Debtor re-purchased those guitars from the estate. As Debtor

admitted at the 341(a) meeting, the total approximate value of the guitars was $5,500 to $6,400, "if marketed."

Considering the totality of the evidence in this case, the court finds that Debtor, in his Schedule B and Amended Schedule B, intentionally undervalued the above mentioned property, knowingly and fraudulently, with the intent to deceive his creditors. In doing so, Debtor made false oaths in his schedules in violation of 11 U.S.C. § 727(a)(4)(A). It is inconceivable that Debtor did not know the true (or at least more accurate) values for his assets when he signed his schedules under oath. Debtor testified during the trial that he was a "hobbyist" and was "meticulous" about his collections. He testified he had been collecting, riding and enjoying bikes for over 30 years. Debtor was an avid eBay user and had extensive experience purchasing items on eBay. Debtor's receipts show that Debtor had made numerous purchases on eBay. Debtor kept careful records of his bicycles and guitars at the time of his purchases and prepared detailed and comprehensive itemizations listing not just the bicycles and guitars but many of their component parts. He testified at trial that he attended Porsche car shows in 2004 and 2005. Debtor admitted at trial that he "might have" looked up the Porsche's value on eBay at some point to ascertain its value. The evidence persuades the court that Debtor knew that the true (or at least more accurate) values of his assets listed in his schedules were significantly higher than stated; he consciously chose not to list values more closely related to their true market value.

Debtor testified under oath at the trial in response to cross-examination and on redirect. Plaintiff's exhibits and the extracts of Debtor's 341(a) meeting and deposition testimony were admitted into evidence by stipulation of the parties. As stated on the record at the end of the trial, the court found Debtor's testimony, including his explanation for why he substantially undervalued his assets, to be not credible, especially in light of the extensive documentary evidence introduced in this case by the Plaintiff.

The record in this adversary is voluminous. To assist the reader, the court provides below a list of some important documents filed with the court that may simplify the task of reviewing the record in this case. The court incorporates herein the following documents filed in the record of this adversary proceeding:

Joint Pretrial Order—Doc. 13 Trial Setting Order—Doc. 14

Notice of Errata re: Brad Krasnoff Declaration (especially, 341(a) meeting of creditors, November 7, 2014, Krasnoff examination of Debtor, 10:15–18; 11:1622)—Doc. 25

Request for Judicial Notice for Trial (which the court hereby grants)—Doc. 33

Motion in Limine of Plaintiff (which the court granted in large part as discussed on the record)—Doc. 34

United States Trustee's Notice of Lodging of Marked Pages of Transcripts of Pynn's Testimony on November 7, 2014 at 341(a) Meeting of Creditors (especially, Agboke examination of Debtor, 22:6–8, 24:18–22; 26:18–27:9; 28:1417; 32:13–19)—Doc. 40

Plaintiff's Evidentiary Objections to Declaration of Pynn (the court's evidentiary rulings were announced at trial)—Doc. 30

The court hereby adopts the United States Trustee's Findings of Fact as modified by the court and entered on the docket—Doc. 43

## DEBTOR'S DISCHARGE IS DENIED PURSUANT TO 11 U.S.C. § 727(a)(4)(A)

Pursuant to 11 U.S.C. § 727(a)(4)(A), the court shall grant a discharge unless the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account. To prevail on his claims, Plaintiff must prove by a preponderance of the evidence that (1) Debtor made a false statement or omission, (2) regarding a material fact, and (3) did so knowingly and fraudulently. *Khalil v. Developers Sur. & Indem. Co. (In re Khalil)*, 379 B.R. 163, 172 (9th Cir. BAP 2007), *aff'd* 578 F.3d 1167 (9th Cir.2009) (citing *Searles v. Riley (In re Searles)*, 317 B.R. 368, 377 (9th Cir. BAP 2004)). Discharge provisions are liberally construed in favor of debtors and strictly against the person objecting to the discharge. *See Beauchamp v. Hoose (In re Beauchamp)*, 236 B.R. 727, 730 (9th Cir. BAP 1999), *aff'd* 5 Fed.Appx. 743 (9th Cir.2001).

***Debtor made false statements and omissions.***

A false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath. *In re Khalil*, 379 B.R. at 172. "The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations." *Id.* (citations omitted). Schedules call for the truth and an accurate itemization of the debtor's assets and of the values of debtor's assets. "The requisite false oath may involve either an affirmatively false statement or an omission from the debtor's schedules." *In re Searles*, 317 B.R. at 377.

A false oath is complete when made. *Id.* (citations omitted). When Debtor filed under oath his Schedule B on September 29, 2014, and his Amended Schedule B on November 18, 2014, he represented that the value of his Porsche was $5,000, the bicycles collectively were worth $2,600, and the guitars were collectively worth $2,750. Each of these values was false. Each of these false values was material.

Numerous errors and omissions in schedules can qualify as false oaths under § 727(a)(4)(A). *Retz v. Samson, et al. (In re Retz)*, 606 F.3d 1189, 1197 (9th Cir. 2010); *see also In re Khalil*, 379 B.R. at 172. Debtor testified at trial that he made a simple mistake regarding valuation in using quick sale values instead of true market values. Debtor's claim in that regard was self-serving and not credible, especially in light of Plaintiff's documentary evidence derived from Debtor's records that demonstrated Debtor's detailed knowledge of what he owned. It was not credible, given Debtor's attention to detail and intense interest in his collection of assets, that he did not know more accurate values for his assets when he prepared his schedules. Debtor's testimony at the 341(a) meeting regarding sale of his assets on eBay establishes that he knew their fair market values, or, at the least, that their values were significantly higher than asserted in his schedules. Debtor filed his Amended Schedule B after attending the 341(a) meeting and admitting the market values were higher, but his later amendments did not reflect higher, more accurate values.

When schedules reflect an offending oath, a debtor has a continuing duty to assure the accuracy of his schedules; the proper method of correction is a formal amendment of the schedules. *In re Searles*, 317 B.R. at 377. In *Searles,* the court determined that an unfiled letter to the trustee did not suffice to exonerate the debtor. Debtor's testimony at the 341(a)

meeting regarding the eBay values was not sufficient to correct the errors on his Schedule B "because [such testimony] is not in the plain view of the parties in interest who should be entitled to rely on the accuracy of the court's official file." *Id.* Debtor's persistent listing of low-ball values in his schedules constitutes persuasive evidence that he made false statements under oath, knowingly and fraudulently.

**The false statements and omissions regarding the value of his personal property were material.**

 The relevant false oath must relate to a material fact. *In re Retz*, 606 F.3d at 1198 (citing *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (9th Cir. BAP 2005), *aff'd* 241 Fed.Appx. 420 (9th Cir.2007)). A fact is material if it bears a relationship to the debtor's estate, or concerns the discovery of assets, or the existence and disposition of the debtor's property. *In re Kahlil*, 379 B.R. at 173. "An omission or misstatement that 'detrimentally affects administration of the estate' is material." *In re Retz*, 606 F.3d at 1198 (quoting *Fogal Legware of Switzerland, Inc. v. Sheldon and Joan Willis (In re Willis)*, 243 B.R. 58, 63 (9th Cir. BAP 1999)).

Here, Debtor approached his bankruptcy schedules seemingly with the idea of persuading his creditors that these assets were of no value to creditors because they were, cumulatively, worth less than the statutory exemptions to which the Debtor was entitled. That is, Debtor's filing would result in a "no asset" chapter 7 case with no recovery for creditors. Although Debtor did not conceal the assets themselves, it is clear from the evidence that he knowingly and fraudulently attempted to conceal their true values. Based on evidence from the actual sales of Debtor's

assets in this case, Debtor concealed at least $78,000 worth of value in the Porsche and $4,000 worth of value in the bikes and guitars. This is a total of $82,000. This is a significant amount of value that Debtor attempted to hide from his creditors; the concealment adversely affected the administration of this estate. Debtor was obligated to state realistic values of his assets, especially given his obviously intense interest in his bicycles, guitars and Porsche as an admittedly long term hobbyist and collector, an active eBay user and Porsche car show attendee, all as the record establishes.

**Debtor knowingly and fraudulently made false statements and omissions regarding the value of his personal property.**

 Proof of actual intent of fraud is required. *In re Roberts*, 331 B.R. at 884 (a false statement resulting from ignorance or carelessness does not rise to the level of "knowing and fraudulent."). Debtor must have "knowingly" and "fraudulently" made a false oath or account. *In re Khalil*, 379 B.R. at 173. Debtor acts knowingly if he acts deliberately and consciously. *Id.* "Recklessness does not meet the statutory requirements of knowing misconduct." *Id.* (citing *In re Roberts*, 331 B.R. at 884). However, recklessness, including reckless indifference or disregard for the truth, can be probative of fraudulent intent. *See In re Khalil*, 379 B.R. at 173–75.

As for acting fraudulently, the court in *Roberts* held that the elements of common law fraud substantially overlap the elements of a claim under § 727(a)(4)(A), except that materiality replaces the elements of reliance and proximately caused damage, so that the creditor [or Plaintiff] must show: (1) [that] Debtor made representations [e.g., a false statement or omission in bankruptcy schedules]; (2) that at the time he knew were false; and (3) that he made

them with the intention and purpose of deceiving creditors. *In re Khalil*, 379 B.R. at 173.

Debtor's claim that he made an honest mistake in his method for valuation of personal assets was simply not credible. When Debtor filed his Schedule B on September 29, 2014, and his Amended Schedule B on November 18, 2014, he deliberately and consciously made representations of the value of his Porsche, bicycles and guitars that he knew were false. He undervalued the property with the intention and purpose of deceiving his creditors through the stratagem of low-ball statements of value that, for Debtor, fit neatly, albeit falsely, into the California exemption scheme.

The fact that Debtor testified to some correct fair market values at his 341(a) meeting and cooperated with various participants in the bankruptcy case does not negate his conscious act of undervaluing the property on his original Schedule B and his Amended Schedule B. The court concludes that Debtor acted deliberately and consciously when he filed the Schedule B and Amended Schedule B and failed to include credible, more accurate values for his assets. It is clear from his testimony at the 341(a) meeting that Debtor was aware that he listed incorrect values for his bicycles and guitars in his Schedule B. Despite this knowledge, Debtor failed to correct his Amended Schedule B. Debtor's failure to amend his schedules promptly and accurately upon noting the discrepancies supports the court's inference that Debtor acted with wrongful intent, knowingly and fraudulently. *See In re Searles*, 317 B.R. at 377.

Debtor claims he valued the Porsche at $5,000 because of his "complete ignorance of its value." The court does not believe that Debtor was ignorant of the Porsche's value. Debtor must have had a reasonably good idea of the true value of the Porsche. He purchased the Porsche in 2003 and attended Porsche car shows in 2004 and 2005. He paid close to $4,000 for repairs after he purchased the car. At a minimum, he must have believed the Porsche had a value of at least $9,000. Bendis Companies valued the Porsche at $20,000 to $45,000 even though the car was not operable at the time of the Bendis appraisal. The court-supervised auction of the Porsche went forward with an opening bid of $50,000. The winning bid for the Porsche was $83,000, a sale price that demonstrates the utter lack of credibility of the statements Debtor made under oath.

The evidence establishes that Debtor must have known the Porsche was worth more. Debtor regularly purchased items on eBay. He was familiar with eBay values and even went so far as to admit that he "might have" looked up the Porsche's value on eBay at some point to ascertain its value.

Further evidence of Debtor's intent to deceive was the fact that he valued his other vehicle, a 2008 Honda Fit, at fair market value, not a quick sale, liquidation price. Because Debtor valued his two vehicles employing differing theories, it appears that Debtor employed his quick sale value strategically to undervalue the Porsche to keep it out of the hands of his creditors, and the court so concludes.

During trial, as a defense to Plaintiff's claim of intent to deceive, Debtor testified that he failed to include amended values for his assets because his attorney and Mr. Agboke from the United States Trustee's Office advised him not to amend his Schedule B. This trial testimony from Debtor was self-serving and not credible. Debtor did not provide any corroborating evidence to support his assertions. To the contrary, Agboke's credible testimony refuted Debt-

or's testimony. Agboke never advised Debtor not to amend his Schedule B.

 There was no credible evidence to show that Nam Le, Debtor's attorney (Le), advised Debtor not to state correctly the true values for Debtor's personal assets in his Schedule B or Amended Schedule B. Even if Le had advised Debtor to misstate the values, that still would not have provided a valid excuse for Debtor's failure to accurately value his assets on his schedules. "Generally, a debtor who acts in reliance on the advice of his attorney lacks intent required to deny him a discharge of his debt." *In re Retz*, 606 F.3d at 1199 (quoting *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1343 (9th Cir.1986)). "However, the debtor's reliance must be in good faith." *Id.* The advice of counsel is not a defense when the erroneous information should have been evident to the debtor. *Id.* (citing *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 111 (1st Cir.1987)). "A debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath." *In re Retz*, 606 F.3d. at 1199 (quoting *In re Tully*, at 111). Here, Debtor clearly knew the values stated in his Amended Schedule B were incorrect. Even if Le had advised Debtor not to correct Schedule B, Debtor could not have relied on such advice in good faith when the totality of the testimonial and documentary evidence here overwhelmingly leads to the conclusion that the true values of the Porsche, the bicycles and the guitars were significantly greater than stated in his schedules and were reasonably well known to the Debtor.

 "The continuing nature of the duty to assure accurate schedules of assets is fundamental because the viability of the system of voluntary bankruptcy depends upon full, candid, and complete disclosure by debtors of their financial affairs." *In re Searles*, 317 B.R. 368, 378 (9th Cir. BAP 2004). Under the circumstances, it was not credible, as Debtor would have the court believe, that it was nothing more than simple carelessness on his part when he understated the values on his schedules. Debtor's sworn duty was to provide his creditors reasonably accurate values for his assets. He intentionally, knowingly, and fraudulently failed to comply with this duty.

As further evidence of his wrongdoing, Debtor made a carefully calculated exemption claim in his Schedule C. The total amount claimed as exempt was very close to the dollar amount Debtor was entitled to claim under California Code of Civil Procedure Code § 703.140(b). This was not a coincidence. Debtor intentionally undervalued his property in his Schedule C, clearly, the court concludes, to make it appear that there was no value in his assets available to his creditors beyond his claimed exemptions. He attempted to conceal the true values with the hope to gain a discharge and avoid paying his creditors any part of his $224,621.69 in unsecured debt, including especially the $185,000 judgment held by Wells Fargo, all the while retaining his bicycles, guitars and Porsche.

## THE EVIDENCE IS INSUFFICIENT TO SUPPORT A DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)(2)(A)

The United States Trustee asks that the Debtor's discharge be denied on the basis of § 727(a)(2)(A) which provides:

(a) The court shall grant the debtor a discharge, unless(*)—

· · ·

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with

custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed or has permitted to be transferred, removed, destroyed, mutilated, or concealed–

. . .

(A) property of the debtor, within one year before the date of the filing of the petition . . . .

11 U.S.C. § 727(a)(2)(A) (emphasis added).

Retaining a secret benefit of equity in property satisfies the requirement of concealment of assets under § 727(a)(2)(A). *In re Lawson,* 122 F.3d 1237 (9th Cir.1997) (debtor's granting of a deed of trust to her mother supported a finding that debtor concealed property to satisfy the denial of discharge for concealment of assets under § 727(a)(2)(A)). Although this court concludes that Debtor hid the true value and his substantial equity in his Porsche, bicycles and guitars when he filed his Schedule B and Amended Schedule B, the plain language of § 727(a)(2)(A) applies where concealment occurs within one year before the date of the filing of the petition. Plaintiff introduced no evidence to show that Debtor attempted to conceal the value of his property before he filed his chapter 7 petition. The concealment occurred at the time of the filing and after the filing of the petition. Therefore, the court declines to make a finding of prepetition concealment.

## CONCLUSION

Plaintiff proved by the preponderance of the evidence that (1) Debtor made false statements and omissions, (2) regarding material facts, and (3) did so knowingly and fraudulently, as required by the standard established in *Khalil.* The totality of the evidence and all the circumstantial evidence leads the court to conclude that the statements of value in Debtor's Schedule B and Amended Schedule B were made knowingly and fraudulently and were designed to conceal from creditors more accurate values and a significant amount of equity that was known to the Debtor at the time he filed his schedules.

Debtor's discharge is denied pursuant to 11 U.S.C. § 727(a)(4)(A).

The court dismisses Plaintiff's § 727(a)(2)(A) claim.

IT IS SO ORDERED.