**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | ) BAP No. CC-14-1032-PaTaD |
| | ) |
| MOHSEN LOGHMANI, | ) Bankr. No. 12-12998-VK |
| | ) |
| Debtor. | ) Adv. No. 12-01419-VK |
| _____ | ) |
| | ) |
| MOHSEN LOGHMANI, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) **M E M O R A N D U M**[1] |
| | ) |
| UNITED STATES TRUSTEE; | ) |
| AMY GOLDMAN, Chapter 7 Trustee,[2] | ) |
| | ) |
| Appellees. | ) |
| _____ | ) |

Submitted Without Oral Argument
on January 22, 2015[3]

Filed - February 2, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Victoria S. Kaufman, Bankruptcy Judge, Presiding
_____

Appearances:    Mohsen Loghmani, Appellant, pro se, on brief;
Russell Clementson, Trial Attorney, United States
Trustee, on brief for Appellee United States
Trustee.
_____

---

[1]   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

[2]   Appellee Amy Goldman, Trustee, did not file briefs or participate in this appeal.

[3]   After examination of the briefs and record, and after notice to the parties, in an order entered October 21, 2014, the Panel unanimously determined that oral argument was not needed for this appeal.  9th Cir. BAP Rule 8019-1.

-1-

Before: PAPPAS, TAYLOR, and DUNN, Bankruptcy Judges.

Chapter 7[4] debtor Mohsen Loghmani ("Debtor") appeals the judgment of the bankruptcy court denying him a discharge under § 727(a)(2)(A) and (a)(4)(A) in an adversary proceeding prosecuted by the United States Trustee ("UST"). We AFFIRM.

## I. FACTS

The material facts are not in dispute. On August 24, 2005, Debtor, along with his wife, purchased a parcel of vacant land in San Bernardino County, California (the "Property"). Debtor and his wife paid $17,000 for the Property and took title as "husband and wife as joint tenants."

In 2009, Debtor was sued by Tessie Cleveland Community Services Corporation ("Tessie") in California state court. In the state court action, Tessie alleged, among other things, that Debtor breached a personal services contract. After trial, a jury rendered a verdict in favor of Tessie on its breach of contract claim and awarded Tessie $388,325.47 in damages on December 28, 2011.

After the jury's verdict, but before a judgment was entered, Debtor and his wife transferred the Property to their son via a quitclaim deed signed by Debtor and his wife on February 2, 2012. Debtor asserts that, at the time of this transfer, while he valued the Property at approximately $10,000, he and his wife did not receive any payment from their son for the transfer because they owed him money and this transfer was meant to satisfy a portion of

---

[4] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

that debt. Debtor's son was listed on Debtor's schedule F as holding a "personal loan" unsecured claim. On the same day he signed the quitclaim deed, Debtor drove from his home in North Hollywood to the San Bernardino County Recorder's Office and recorded the deed.[5]

Two weeks later, Debtor transferred a 2003 BMW Z4 Roadster to the same son in exchange for $5,200 in cash. Debtor later used some of these funds to pay his bankruptcy counsel's fees.

On March 7, 2012, after Debtor's transfer of the Property and the BMW, the state court entered a judgment against Debtor.[6]

On March 29, 2012, represented by counsel, Debtor filed a chapter 7 petition. Debtor's schedules and statement of financial affairs ("SOFA") did not disclose the transfers of the Property or the BMW to his son. The schedules and SOFA, however, did list Debtor's transfers of his interests in other real property in which he lacked any equity.

On May 31, 2012, Debtor testified at his § 341(a) meeting that his schedules and SOFA were true and correct, although he noted that he might add a couple of unsecured creditors. Thereafter, Debtor's bankruptcy case was selected by the UST for a debtor audit. See 28 U.S.C. § 586(f). On July 2, 2012, the auditors filed a report with the bankruptcy court concluding that

---

[5] We take judicial notice of the fact that the distance between North Hollywood, California and San Bernardino, California Recorder's Office is approximately 70 miles. See Federal Rule of Evidence 201.

[6] The state court later awarded Tessie attorney's fees in the amount of $1,458,101.25. The state court's judgment is currently on appeal.

-3-

Debtor's schedules and SOFA contained a material misstatement because they did not disclose Debtor's transfer of the BMW. Debtor filed an amended SOFA listing the transfer of the BMW to his son, but the amended SOFA did not disclose the transfer of the Property.

The UST later discovered Debtor's prepetition transfer of the Property to his son. On November 30, 2012, the UST filed an adversary complaint against Debtor objecting to entry of a discharge under § 727(a)(2)(A) and (a)(4)(A). Eight months later, on July 31, 2013, Debtor filed a second amended SOFA wherein, for the first time, he disclosed the Property transfer.

The UST and Debtor filed a joint pretrial stipulation reciting various undisputed facts and identifying issues of fact for trial. Notably, the UST and Debtor agreed it was undisputed that Debtor and his wife "owed their son money and transferred [the Property] to their son in order to remove the property from their holdings and to give their son priority over their other creditors." As to the fact issues, the parties advised the bankruptcy court:

> The following issues of fact, and no others, remain to be litigated. Whether [Debtor] intentionally and fraudulently failed to disclose the transfer of [the Property] in his [SOFA]. Whether [Debtor] knowingly and fraudulently gave a false oath by failing to disclose the transfer of [the Property] in his [SOFA]. Whether [Debtor] transferred [the Property] to his son to hinder, delay or defraud a creditor, or the [t]rustee.

-4-

Notwithstanding the stipulation, at trial[7] Debtor appeared pro se and testified that he did not disclose the transfer of the Property in his SOFA, amended SOFA, or at his § 341(a) meeting, because he had thought the Property was his wife's separate property. Trial Tr. 49:11-12, Dec. 3, 2013.

At the conclusion of the parties' submission of evidence, testimony, and argument, the bankruptcy court recited its oral ruling holding that, pursuant to § 727(a)(2)(A) and (a)(4)(A), Debtor would be denied a discharge. On January 7, 2014, the bankruptcy court entered written findings of fact and conclusions of law incorporating its oral ruling. As it had in its oral ruling, the court determined that Debtor's "testimony that he did not disclose the transfer of [the Property] because he thought [it] was his wife's [separate property]. . . is not credible." As to § 727(a)(2)(A), the bankruptcy court concluded:

> The facts and circumstances including (1) the closeness of the relationship between [Debtor] and the recipient of the [t]ransfer, [Debtor's] son; (2) the transfer shortly after the jury verdict . . .; (3) [Debtor's] belief that he could not pay his creditors; and (4) that [Debtor] personally signed and personally recorded the quit-claim deed to his son, all establish that [Debtor] transferred [the Property] with the actual intent to hinder, delay or defraud a creditor.

---

[7] At a hearing the day before the trial was to begin, Debtor advised the bankruptcy court of his plan to file a motion to dismiss his chapter 7 case and thereby eliminate the need for the trial on the objection to his discharge. After the hearing, Debtor filed the motion to dismiss his case, and the next day Debtor asked the bankruptcy court to rule on his motion before making his opening remarks at the trial. The bankruptcy court declined to do so due because Debtor had not given proper notice of the motion to creditors. The bankruptcy court eventually denied Debtor's motion to dismiss his case in an order dated January 29, 2014.

As to the UST's § 727(a)(4)(A) claim, the bankruptcy court concluded: "[t]he evidence shows that [Debtor] made false oaths and accounts in his original [SOFA], his amended [SOFA], and at his § 341(a) examination. [Debtor] knowingly and fraudulently made these false oaths and accounts in connection with the case."

On January 7, 2014, the bankruptcy court entered a judgment denying Debtor a discharge under both § 727(a)(2)(A) and (a)(4)(A). Debtor filed a timely appeal.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(J). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Whether the bankruptcy court erred in denying Debtor a discharge under § 727(a)(2)(A) and (a)(4)(A).

## IV. STANDARD OF REVIEW

We review a bankruptcy court's decision resolving an objection to discharge as follows:

> "(1) the bankruptcy court's determinations of the historical facts are reviewed for clear error; (2) the selection of the applicable legal rules under § 727 is reviewed de novo; and (3) the application of the facts to those rules requiring the exercise of judgments about values animating the rules is reviewed de novo."

Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010) (quoting Searles v. Riley (In re Searles), 317 B.R. 368, 373 (9th Cir. BAP 2004), aff'd, 212 Fed. Appx. 589 (9th Cir. 2006)).

The bankruptcy court's determinations concerning the debtor's intent are factual matters reviewed for clear error. Beauchamp v. Hoose (In re Beauchamp), 236 B.R. 727, 729 (9th Cir. BAP 1999). A

-6-

factual finding is clearly erroneous if it is "illogical, implausible, or without support in the record." <u>In re Retz</u>, 606 F.3d at 1196 (citing <u>United States v. Hinkson</u>, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009) (en banc)).

## V. DISCUSSION

The party objecting to a debtor's discharge under § 727(a) bears the burden of proving by a preponderance of the evidence that the debtor's discharge should be denied. <u>In re Retz</u>, 606 F.3d at 1196. Courts are to "'construe § 727 liberally in favor of debtors and strictly against parties objecting to discharge.'" <u>Id.</u> (quoting <u>Bernard v. Sheaffer (In re Bernard)</u>, 96 F.3d 1279, 1281 (9th Cir. 1996)).

Here, the bankruptcy court denied Debtor's discharge pursuant to § 727(a)(2)(A) because he transferred the Property with the intent to hinder, delay, or defraud his creditors, and under § 727(a)(4)(A) because he failed to timely disclose his prepetition transfer of the Property.[8] Debtor argues that the court erred because he lacked the required bad intent to deny him a discharge because: (1) he believed the Property was owned solely by his wife; (2) he was under extreme mental stress leading up to and during his bankruptcy case due to the state court litigation and judgment; and (3) he was ineffectively represented by his

---

[8] While Debtor's briefing discusses the Property and his reasons for transferring and not disclosing the transfer to his son, it also veers off topic in addressing his reasons for transferring the BMW. The brief also includes Debtor's extensive recitation about the actions and conduct of Tessie's counsel in connection with the state court action. While these matters may arguably provide context, at bottom, Debtor's perceptions about the wrongs imposed upon him are not relevant or helpful in resolving this appeal.

-7-

bankruptcy counsel.  Debtor's arguments all lack merit.

**A.    The bankruptcy court did not err in finding that Debtor transferred the Property with the intent to hinder, delay, or defraud creditors for the purposes of § 727(a)(2)(A).**

Section 727(a)(2)(A) provides:

> (a) [t]he court shall grant the debtor a discharge unless— . . . (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed— (A) property of the debtor, within one year before the date of the filing of the petition[.]

Under § 727(a)(2)(A), a party objecting to a debtor's discharge must prove by a preponderance of the evidence: "'(1) disposition of property, such as a transfer or concealment, and (2) a subjective intent on the debtor's part to hinder, delay, or defraud a creditor through the act of disposing of the property.'" In re Retz, 606 F.3d at 1200 (quoting Hughes v. Lawson (In re Lawson), 122 F.3d 1237, 1240 (9th Cir. 1997)).

The presence of "badges of fraud" may support a bankruptcy court's finding that a debtor acted with fraudulent intent in transferring or concealing property, including:

> (1) a close relationship between the transferor and the transferee; (2) that the transfer was in anticipation of a pending suit; (3) that the transferor Debtor was insolvent or in poor financial condition at the time; (4) that all or substantially all of the Debtor's property was transferred; (5) that the transfer so completely depleted the Debtor's assets that the creditor has been hindered or delayed in recovering any part of the judgment; and (6) that the Debtor received inadequate consideration for the transfer.

In re Retz, 606 F.3d at 1200 (quoting Emmett Valley Assocs. v.

Woodfield (In re Woodfield), 978 F.2d 516, 518 (9th Cir. 1992)).

In this case, it is undisputed that Debtor transferred his interest in the Property to his son on February 2, 2012, and that Debtor filed his bankruptcy petition on March 29, 2012. Debtor argues, however, the bankruptcy court erred in finding that he made this transfer with the intent to hinder, delay, or defraud his creditors because, at the time, he believed his wife was the sole owner of the Property and he did not realize his mistake due to the stress he was under at the time.

The bankruptcy court rejected Debtor's contention. Because the court's determination of Debtor's intent is a finding of fact, we review if for clear error. In re Beauchamp, 236 B.R. at 729. We find no clear error here.

To begin, the bankruptcy court found Debtor's testimony was not credible when he testified that he did not know he owned the Property when he deeded it away. As the trier of fact, the bankruptcy court's findings as to credibility of witnesses are afforded deference because the court had the opportunity "to note 'variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief of what is said.'" In re Retz, 606 F.3d at 1196 (quoting Anderson v. City of Bessemer City, North Carolina, 470 U.S. 564, 575 (1985)). As a result, we will not disturb the bankruptcy court's decision declining to believe Debtor's testimony concerning his intent in transferring the Property.

Beyond the credibility determination, we also agree with the bankruptcy court's conclusion that the undisputed facts belie Debtor's assertion that he thought he did not own the Property at

the time of the transfer. Debtor executed the quitclaim deed on February 2, 2012, a short time after the jury had returned a sizeable verdict against him in the state court action. The same day that he signed the deed, he drove from his home in North Hollywood to the San Bernardino Recorder's Office, a distance of approximately seventy (70) miles, to record the deed.

In addition, the bankruptcy court identified several badges of fraud in this case as support for the inference that Debtor had acted with the requisite intent under § 727(a)(2)(A), including: (1) the close relationship between Debtor and the transferee of the Property; (2) the timing of the transfer, soon after entry of the large jury verdict; (3) the fact that Debtor believed he could not pay his creditors at the time of the transfer; and (4) the fact that Debtor personally signed the quitclaim deed and personally delivered it to be filed on the same day. The bankruptcy court emphasized these factors and "all establish that [Debtor] transferred [the Property] with intent to hinder, delay or defraud." The bankruptcy court did not clearly err in making these findings.

On this record, the bankruptcy court did not err in finding that Debtor transferred his interest in the Property to his son with the intent to hinder, defraud, or delay his creditors, and in concluding that Debtor's discharge should be denied under § 727(a)(2)(A).

**B.    The bankruptcy court did not clearly err under § 727(a)(4)(A) in finding Debtor knowingly and fraudulently made a false oath or account in his SOFA, amended SOFA, and at the § 341(a) meeting.**

Section 727(a)(4)(A) provides: "(a) [t]he court shall grant

-10-

the debtor a discharge, unless— . . . (4) the debtor knowingly and fraudulently, in or in connection with the case— (A) made a false oath or account." The party objecting to a debtor's discharge must prove under § 727(a)(4)(A), by a preponderance of the evidence, "'(1) that the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently.'" In re Retz, 606 F.3d at 1197 (quoting Roberts v. Erhard (In re Roberts), 331 B.R. 876, 882 (9th Cir. BAP 2005)). In order to prove fraudulent intent under this Code provision, the objecting party must show: (1) the debtor made a false statement or omission in the bankruptcy case; (2) that he knew was false at the time of making the statement; and (3) that he made the statement with the "intention and purpose of deceiving the creditors." Khalil v. Developers Sur. & Indem. Co. (In re Khalil), 379 B.R. 163, 173 (9th Cir. BAP 2007) (quoting In re Roberts), 331 B.R. at 884); see also In re Retz, 606 F.3d at 1199. "Intent is usually proven by circumstantial evidence or by inferences drawn from the debtor's conduct." In re Retz, 606 F.3d at 1199 (citing Devers v. Bank of Sheridan, Mont. (In re Devers), 759 F.2d 751, 753-54 (9th Cir. 1985)).

Here, the bankruptcy court did not err in deciding that Debtor made a false oath in connection with his case, and that he did so repeatedly.

Debtor filed his initial SOFA on March 29, 2012; it omitted his transfer of the Property to his son. Debtor then testified at his § 341(a) meeting on May 3, 2012, that his SOFA was true and correct. After his case was audited by the UST, and he was

-11-

notified that he had not properly disclosed the transfer of his BMW to his son, Debtor filed an amended SOFA that again omitted the transfer of the Property. The bankruptcy court found that, taken together, these facts were sufficient to show that Debtor had made false oaths in connection with the case. We find no error with this conclusion.

There is also no dispute that these false oaths related to a material fact. The Property was purchased for $17,000, and Debtor testified he believed the value of the Property to be approximately $10,000 at the time of the transfer. Had the Debtor disclosed the transfer, the trustee may have been able to avoid it and liquidate Debtor's interest in the Property for the benefit of his creditors. See § 547(b) (empowering a trustee to avoid prepetition preferential transfers to creditors). Under these facts, we agree with the bankruptcy court that the Property was a significant asset of Debtor and that his omission of information about the transfer would constitute a material fact under § 727(a)(4)(A). See In re Khalil, 379 B.R. at 173 (discussing the "broad test of materiality" that "[a] fact is material 'if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property.'") (quoting Fogal Legware of Switz., Inc. v. Wills (In re Wills), 243 B.R. 58, 62 (9th Cir. BAP 1999)).

Debtor insists that the bankruptcy court erred in concluding that he made knowing and fraudulent false oaths in connection with his case because he allegedly did not know he owned the Property when he transferred it. Again, however, we find no error in the

-12-

bankruptcy court's findings.

The bankruptcy court found, as it did under § 727(a)(2)(A), that Debtor acted fraudulently. For the reasons discussed above, we have concluded that this finding was not clear error.

We also find no error in the bankruptcy court's determination that Debtor made the false oaths knowingly because it is supported by sufficient evidence. See In re Khalil, 379 B.R. at 173 ("A debtor 'acts knowingly if he . . . acts deliberately and consciously.'") (quoting In re Wills, 243 B.R. at 62); see also In re Retz, 606 F.3d at 1198 (holding that a debtor acts knowingly if he or she deliberately and consciously signed the schedules and SOFA knowing they were incomplete). Here, based upon the evidence, the court properly found that Debtor deliberately and consciously omitted the Property transfer in the SOFA, amended SOFA, and in his testimony at the § 341(a) meeting.

Debtor argues that he should not be denied a discharge because the omissions in his bankruptcy filings resulted from the ineffective assistance of his bankruptcy counsel. We disagree. It is generally correct that "'a debtor who acts in reliance on the advice of his attorney lacks the intent to deny him a discharge of his debts.'" In re Retz, 606 F.3d at 1199 (quoting First Beverly Bank v. Adeeb (In re Adeeb), 787 F.2d 1339, 1343 (9th Cir. 1986)). But "[t]he advice of counsel is not a defense when the erroneous information should have been evident to the debtor." Id. (citing Boroff v. Tully (In re Tully), 818 F.2d 106, 111 (1st Cir. 1987)). Here, Debtor does not claim he informed his counsel of the transfer of the Property, that it was counsel who omitted this important information from the two versions of the

-13-

SOFA, or that counsel advised him not to mention the Property at the § 341(a) meeting. Instead, Debtor focuses on other alleged mistakes by his counsel to justify our reversal of the bankruptcy court.[9] Even if these matters raise some level of concern, they do not excuse Debtor's repeated false assertions under oath that he provided complete information; exactly the opposite was true.

The bankruptcy court did not err in denying Debtor a discharge under § 727(a)(4)(A).

## VI.   CONCLUSION

We AFFIRM the judgment of the bankruptcy court denying Debtor a discharge.

---

[9] The other alleged failures of counsel Debtor discusses in his brief include: (1) incorrectly claiming a homestead exemption on Debtor's wife's home; (2) completing and filing means test schedules even though Debtor's debts were primarily business debts; (3) losing the auditor's paperwork; (4) not listing the BMW as a prepetition transfer, even though Debtor told him about it; and (5) being an hour late to his first meeting with Debtor without excuse. Appellant Op. Brief at 9-11.

-14-