In re Isaac I. MERESHIAN dba
4 Seasons Realty and Janna
Mereshian, Debtors.

Robert BAKER, Appellant,

v.

Isaac I. MERESHIAN dba 4 Seasons
Realty and Janna Mereshian,
Appellees.

BAP No. CC–95–1702–VHMo.
Bankruptcy No. LA 92–29474 CA.
Adversary No. AD 92–04281 CA.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted June 20, 1996.

Decided Aug. 20, 1996.

Steven R. Fox, Tarzana, CA, for Appellant.

Jack M. Panagiotis, Santa Monica, CA, for Appellees.

Before: VOLINN, HAGAN and MONTALI,[1] Bankruptcy Judges.

### OPINION

VOLINN, Bankruptcy Judge:

Robert Baker, the debtor's former attorney and a creditor, filed an adversary proceeding to preclude debtor's discharge in bankruptcy and to have his debt declared nondischargeable. The lower court granted the debtor's motion for a directed verdict and Mr. Baker appealed. We affirm.

### BACKGROUND FACTS

Isaac Mereshian, the debtor,[2] was a real estate broker in southern California. Mr. Baker, plaintiff and now appellant, had represented Mr. Mereshian on an ongoing basis for approximately fifteen years. During this time, according to Mr. Baker, Mr. Mereshian

---

1. Honorable Dennis Montali, Bankruptcy Judge for the Northern District of California, sitting by designation.

2. Mr. Mereshian's wife, Janna, is a co-debtor.

occasionally owed Mr. Baker money for services rendered, but he had always eventually paid in full. By the late 1980s, Mr. Baker became concerned about Mr. Mereshian's ability to pay all of the legal bills he owed. On more than one occasion, Mr. Baker initially declined to represent Mr. Mereshian, but relented when Mr. Mereshian agreed to pay the outstanding charges in full. On at least one of these occasions, Mr. Mereshian paid a portion of the bill owed. In addition, apparently Mr. Mereshian paid some portion of the new charges incurred in the matters. For instance, according to Mr. Baker, at the time of the bankruptcy filing Mr. Mereshian owed $6,000 to $7,000 of the approximately $12,000 to $13,000 in legal fees incurred in one case. Mr. Baker claims that Mr. Mereshian owes him $34,500.

In October, 1990, Mr. Mereshian agreed to a payment plan under which he would pay $1000 per month.[3] It is unclear whether he made any payments under this plan. Eventually, in early 1991, Mr. Baker declined to take other work from Mr. Mereshian until the latter paid his bill in full. In addition, Mr. Baker sued in state court to recover his fees. Presumably, this action was stayed when Mr. Mereshian declared bankruptcy.

In the late 1980s and early 1990s, southern California's real estate market deteriorated and Mr. Mereshian suffered financial difficul-

ties. Mr. Mereshian owned several pieces of real estate encumbered by debt. Within one year prior to bankruptcy, Mr. Mereshian deeded these properties to their respective secured creditors. Mr. Mereshian testified at the hearing that at the time of the transfers, he had no equity in any of the properties.[4]

Mr. Mereshian and his wife filed a joint bankruptcy under Chapter 7 in June, 1992. On their schedules, they did not list their interests in three of the properties transferred, nor did they list the transfers. In addition, they did not list a lawsuit filed by Wells Fargo Bank. According to Mr. Mereshian, he revealed all of the facts regarding the transfers and the lawsuit at the meeting of creditors. Apparently a representative of Mr. Baker's firm attended that meeting.

Following Mr. Mereshian's discharge, Mr. Baker filed an adversary proceeding, alleging that Mr. Mereshian's discharge should be denied pursuant to Section [5] 727(a)(2), (4) and (5) [6] and that his debt to Mr. Baker should be declared nondischargeable pursuant to Section 523.[7]

In May, 1994, approximately one month prior to trial, Mr. Baker asked the bankruptcy court judge to recuse himself; Mr. Baker believed that certain statements allegedly

---

3. At some point, Mr. Mereshian asked the state bar to have an arbitration hearing over the fees. It is unclear why the arbitration failed.

4. In addition, Mr. Mereshian claimed he never had ownership in one of the properties; he said that his name was on the deed because he applied for a loan on behalf of a friend.

5. Unless otherwise stated, all references to "sections", "§" and "rules" refer to the U.S. Bankruptcy Code, 11 U.S.C. § 101 et seq.

6. Section 727 provides in pertinent part, that the court will grant the debtor a discharge unless:

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or
. . . .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;
(B) presented or used a false claim;
. . . .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

11 U.S.C. § 727.

7. Section 523 provides in pertinent part that:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
. . . .
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. 523.

made by the judge, including a statement that the judge thought the lawsuit was immoral, showed prejudice.[8] The court denied this motion and Mr. Baker did not appeal.

In June, 1994, trial was held; both Mr. Mereshian and Mr. Baker testified. Following presentation of Mr. Baker's testimony and exhibits, the trial court granted Mr. Mereshian's oral motion for a directed verdict. In its oral findings, the court stated that Mr. Baker had failed to establish an account stated, that only some of the services were rendered in close proximity to the times when the promises of payments were made, and that Mr. Baker did not reasonably rely nor justifiably rely on the representations, if any. As to the Section 727 causes of action, the court stated in the written findings that (1) Mr. Baker presented only evidence of "some transfers which had no value ... at the time the transfer was made;" (2) "there was an absence of evidence of intent to hinder, delay or defraud"; (3) "the testimony established that the debtor did not knowingly and fraudulently ... make a false oath or account;" and (3) that Mr. Mereshian did not hinder delay or defraud the creditors "when defendant did not have any interest in the property in the first place and his creditor was about to foreclose on the subject property." The written findings also awarded costs to Mr. Mereshian. Judgment was entered on June 6, 1995 and Mr. Baker timely appealed.

### ISSUES

Did the bankruptcy court err when it denied Mr. Baker's complaint to deny the debtors' discharge pursuant to Section 727 and to have the debtors' debts to Mr. Baker declared nondischargeable pursuant to Section 523?

### STANDARD OF REVIEW

■ Whether a debtor transferred his property with intent to defraud creditors is a finding of fact. *Losner v. Union Bank,* 374 F.2d 111, 112 (9th Cir.1967) (per curiam). A bankruptcy court's findings of fact are reviewed under the clearly erroneous standard, and its conclusions of law are subject to de novo review. *In re Devers,* 759 F.2d 751, 753 (9th Cir.1985). Review under the clearly erroneous standard is "significantly deferential, requiring a 'definite and firm conviction that a mistake has been committed.'" *Granite State Insurance Co. v. Smart Modular Technologies, Inc.,* 76 F.3d 1023, 1028 (9th Cir.1996) (quoting *Concrete Pipe & Prods. v. Construction Laborers Pension Trust,* 508 U.S. 602, 621, 113 S.Ct. 2264, 2278–79, 124 L.Ed.2d 539 (1993)). Under the clearly erroneous standard, the reviewing court may not reverse the district court's findings "simply because it is convinced that it would have decided the case differently." *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *see also Service Employees Int'l Union v. Fair Political Practices Comm'n,* 955 F.2d 1312, 1317 n. 7 (9th Cir.), *cert. denied,* 505 U.S. 1230, 112 S.Ct. 3056, 120 L.Ed.2d 922 (1992). "Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." *Anderson,* 470 U.S. at 574, 105 S.Ct. at 1511.

### DISCUSSION

■ *The section 727 causes of action.* Mr. Baker argues that Mr. Mereshian's discharge should be denied under both Section 727(a)(2), which denies a discharge to one who with intent to hinder, delay or defraud a creditor transfers property of the estate, and under 727(a)(4), which denies a discharge to one who knowingly or fraudulently made a false oath or account. Before a debtor can be denied a general discharge under either of these sections, Mr. Baker must show actual intent.[9] *See In re Adeeb,* 787 F.2d 1339, 1342

---

8. In addition, according to unofficial transcripts provided with the motion to recuse, the bankruptcy court judge said that the complaint was "an unseemly complaint to bring," that "the Plaintiff is using the Bankruptcy Court to take advantage of a former client," and that "I question whether or not an attorney should be suing his client for acts that took place during the time they were representing them."

9. In addition, to succeed in his objection to debtor's discharge under Section 727(a)(2), the plaintiff must prove: "(1) that the act complained of was done at a time subsequent to one year before the filing of the petition; (2) with actual intent to

(9th Cir.1986) (stating that "discharge of debts may be denied under section 727(a)(2)(A) only upon a finding of actual intent to hinder, delay, or defraud creditors"). *See also* 4 *Collier on Bankruptcy,* ¶ 727.04[1] at 727–59 (15th ed. 1996) (stating that to deny a discharge under Section 727(a)(4), "the statement must contain matter which the debtor knew to be false and the debtor must have included them willfully with intent to defraud").

■ "Fraudulent intent may be established by circumstantial evidence, or by inferences drawn from a course of conduct." *Devers,* 759 F.2d at 753–54. Thus, a court may look to all the surrounding facts and circumstances. 4 *Collier, supra,* ¶ 727.02[3] at 727–16–17.

Here, the debtor transferred certain properties that were subject to security interests greater than the value of the property. Although the debtor did not list these transfers in his schedules, the court below found that the debtor revealed the transfers at the meeting of creditors. Mr. Baker argues that this is insufficient to cure a debtor's failure to list transfers. However, the Ninth Circuit, in a comparable situation, has stated that a "debtor who fully discloses his property transactions at the first meeting of creditors is not fraudulently concealing property from his creditors." *Adeeb,* 787 F.2d at 1345 (quoting *In re Waddle,* 29 B.R. 100, 103 (Bankr.W.D.Ky.1983)).[10]

The court below based its findings in part on the fact that the items concealed were of little value to the estate. Mr. Baker cites numerous cases for the proposition that a low value should not stop a court from denying a

discharge under one of the provisions of Section 727. *See, e.g., In re Hoflund,* 163 B.R. 879, 883 (Bankr.N.D.Fla.1993) (court denied discharge despite debtor's claims that the assets had no value because "creditors are entitled to judge for themselves what benefits the estate"). In this case, however, the court used the low value of the assets as one factor to be considered when determining whether the debtor had an intent to defraud. This is appropriate. *See* 4 *Collier, supra,* ¶ 727.02[3] at 727–16–17 ("The fact that valuable property has been gratuitously transferred raises a presumption that such transfer was accompanied by the actual fraudulent intent necessary to bar a discharge under section 727(a)(2). The fact that the property transferred or concealed is of small value, however, tends to negate fraudulent intent.") In addition, according to *Collier,* a transfer of the debtor's property is not made with intent to hinder, delay or defraud a creditor if the property is subject to a security interest and the debtor has no equity in it. 4 *Collier, supra,* ¶ 727.02[3] at 727–17 n. 24 (citing *In re McCloud,* 7 B.R. 819 (Bankr.M.D.Tenn. 1980)). Similarly, "the omission of property of trivial value, which has little effect on the estate, has been treated as immaterial" for purposes of Section 727(a)(4). *Collier, supra,* ¶ 727.04[1] at 727–61–62.

■ Mr. Baker also claims that discharge should be denied pursuant to Section 727(a)(5) which denies a discharge to a debtor who fails to satisfactorily explain any loss of assets. Mr. Baker claims that Mr. Mereshian did not satisfactorily explain the disposition of the real property and of a valuable

hinder, delay, or defraud a creditor or an officer of the estate charged with custody of the property under the Bankruptcy Code; (3) that the act was that of the debtor or his duly authorized agent; (4) that the act consisted of transferring, removing, destroying or concealing any of the debtor's property, or permitting any of these acts to be done." *Matter of Agnew,* 818 F.2d 1284, 1287 (7th Cir.1987) (quoting 4 *Collier on Bankruptcy,* ¶ 727.02[1][b] (15th ed. 1986)).

**10.** *Adeeb* did not hold, nor do we, that a debtor may intentionally omit information called for in the schedules and evade responsibility for such omission simply by producing the information at the first meeting of creditors. In that case, the

Ninth Circuit essentially ruled that a debtor may cure a fraudulent transfer made for insufficient consideration where the debtor reveals the transfers at the first meeting and has already, prior to bankruptcy, made a good faith effort to recover the property so transferred. Here, the transfers, for lack of equity, were voluntarily made to secured creditors in lieu of foreclosure; no one questions the lack of equity. Therefore, the debtor presumably has no right to recover the property transferred. The plaintiff's primary complaint seems to be that the transfers should have been revealed, not that they should not have been made.

watch allegedly owned by the debtor.[11] However, the only evidence that the debtor owned a watch was a claim by Mr. Baker that the debtor—on an unstated date—told Mr. Baker that his watch was worth $10,000.

Whether a loss has been satisfactorily explained is a question of fact and an appellate court must give deference to the trial court which is in the best position to assess the credibility of the witnesses. Apparently, the court below was satisfied with the debtor's explanation of the disposition of the real estate. As to the watch, the court found that the evidence did not show when or if the debtor owned the watch at the time the bankruptcy was filed and, thus, the debtor had not failed to satisfactorily explain the loss of the asset. Although the conclusions of law entered by the court do not specifically address Section 727(a)(5), they contain findings of fact sufficient for the Panel to determine that Mr. Baker's complaint under that section is without merit.

Section 727 is to be construed liberally in favor of debtors and strictly against the creditor. *Adeeb,* 787 F.2d at 1342. Mr. Baker has not shown that the court's factual findings were clearly erroneous. The court had sufficient legal basis for ruling that the debtor did not have fraudulent intent, which is necessary under both 727(a)(2) and (4), and to find that where, as here, a debtor, without intent to defraud, fails to list certain transactions and reveals them to the trustee at the meeting of creditors, denial of discharge under Section 727(a)(4) is not required. Therefore, the bankruptcy court's decision on the section 727 causes of action is affirmed.

*The section 523(a)(2) cause of action.* Mr. Baker also argues that, under Section 523(a)(2), Mr. Mereshian's debt to him should be declared nondischargeable because Mr. Mereshian had no intention to pay for the legal services when he incurred the debt. The Ninth Circuit employs a five-part test for determining when a debt is nondischargeable under section 523(a)(2)(A). The creditor must show that: (1) the debtor made the representations; (2) at the time he knew

they were false; (3) he made them with the intention and purpose of deceiving the creditor; (4) the creditor relied on such representations; (5) the creditor sustained the alleged loss and damage as the proximate result of the representations having been made. *In re Britton,* 950 F.2d 602, 604 (9th Cir.1991).

In this case, Mr. Baker has provided no evidence that Mr. Mereshian made promises to pay that he knew were false and with the intention and purpose of deceiving the creditor. In fact, Mr. Baker testified that Mr. Mereshian paid part of his bill. Mr. Baker has presented no evidence to this court that shows that the lower court's finding was clearly erroneous. Therefore, the bankruptcy court's decision on this cause of action is affirmed.

*Bias of the bankruptcy judge.* Although Mr. Baker has not appealed the lower court's denial of his motion for recusal, he alleges that the court's attitude toward the suit influenced the outcome. He states in his opening brief that the trial judge's views "colored the entire case below and lead the lower court to grant a directed verdict despite Appellant's uncontroverted evidence." However, as discussed above, the "uncontroverted evidence" presented is not sufficient as a legal matter to find for Mr. Baker.

On the question of bias, appellant does not provide any legal arguments to guide the Panel. However, the Supreme Court has stated:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they

---

**11.** In his complaint, the plaintiff listed several personal property assets allegedly owned by the debtor but not listed. At trial and on appeal, the only personal property at issue is the watch.

reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. . . . Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display.

*Liteky v. U.S.*, 510 U.S. 540, 555–56, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994). Here, the lower court's statements do not appear to "display a deep-seated . . . antagonism that would make fair judgment impossible." Therefore, Mr. Baker's complaints regarding the lower court's conduct are without merit.

## CONCLUSION

We believe that the bankruptcy court permissably found that the facts in this case did not show an intent to defraud as required by the bankruptcy code. As stated above, the Panel may not reverse the bankruptcy court on factual questions simply because we might have reached a different conclusion based on the evidence. Here, the appellant has not presented any evidence that indicates the lower court's findings were clearly erroneous; therefore, the judgment of the bankruptcy court is AFFIRMED.