

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   NC-19-1038-FBG |
| JOSEPH L. WILCZAK and JUDITH A. WILCZAK, | Bk. No.    15-52365-SLJ |
| | Adv. No. 16-05022 |
| Debtors. | |
| JOSEPH L. WILCZAK; JUDITH A. WILCZAK, | |
| Appellants, | |
| v. | **MEMORANDUM**[*] |
| SELECT PORTFOLIO SERVICING, INC.; THE BANK OF NEW YORK MELLON, as trustee, on behalf of the holders of the Alternative Loan Trust 2007-OA10, Mortgage Pass-Through Certificates Series 2007-OA10, | |
| Appellees. | |

Argued and Submitted on October 25, 2019
at San Francisco, California

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Filed – November 13, 2019

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Stephen L. Johnson, Bankruptcy Judge, Presiding

—————

Appearances:     Joseph L. Wilczak argued pro se; Bryan L. Hawkins of
                 Stoel Rives LLP argued on behalf of appellees Select
                 Portfolio Servicing and The Bank of New York Mellon.

—————

Before: FARIS, BRAND, and GAN, Bankruptcy Judges.

## INTRODUCTION

Chapter 11[1] debtors Joseph L. Wilczak and Judith A. Wilczak objected to the claim of appellees Select Portfolio Servicing, Inc. ("SPS") and The Bank of New York Mellon, as trustee, on behalf of the holders of the Alternative Loan Trust 2007-OA10, Mortgage Pass-Through Certificates Series 2007-OA10 ("BONY Mellon") (collectively "Creditors"). The Wilczaks admit that the Creditors paid off their prior deed of trust and advanced them over $351,000 in cash. They also admit that they made payments on the loan for eighteen months. But they argue that someone

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

forged their signatures on the loan documents and therefore they are not obligated to repay the loan. The bankruptcy court held a trial and carefully evaluated the evidence. It decided that the Wilczaks' signatures were genuine and valid and overruled the objection.

The Wilczaks appeal. We discern no error and AFFIRM.

## FACTUAL BACKGROUND[2]

### A.    Prepetition events

The Wilczaks own real property located in Los Altos Hills, California (the "Property"). In or around 2007, the Wilczaks dealt with Countrywide Bank, FSB ("Countrywide"[3]) to refinance their existing mortgage.

On May 21, 2007, the Wilczaks went to a title company's office to sign the refinancing documents. The Creditors claim that the Wilczaks signed a loan application, an adjustable rate note for $1,311,000 in favor of Countrywide, a deed of trust in favor of Countrywide, a Truth in Lending Act ("TILA") disclosure statement, and a notice of right to cancel. Cindy North, an employee of the title company, notarized the documents.

The refinancing closed shortly thereafter. The existing lienholder was paid $950,290.59, and the Wilczaks received $351,206.42 in cash.

---

[2] We exercise our discretion to review the bankruptcy court's docket, as appropriate. *See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.),* 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

[3] We use "Countrywide" to refer to both Countrywide Bank, FSB and its successor in interest, Countrywide Home Loans.

The Wilczaks made regular monthly payments on the loan between September 2007 and March 2009. After a while, they had difficulty making the monthly payments. They unsuccessfully sought a loan modification from Countrywide and its successor, Bank of America.

In or around May 2011, appellee BONY Mellon acquired the note and deed of trust. Appellee SPS became the servicer on the note.

The Wilczaks defaulted on the note. The trustee recorded a notice of default in October 2011 and filed a notice of trustee's sale in January 2012.

The Wilczaks commenced litigation in state court against BONY Mellon and others. For the first time, they asserted that their signatures on the 2007 loan documents were forgeries and that they did not sign the documents or assent to the loan. The trial court dismissed the Wilczaks' complaint, and the state court of appeal affirmed.

B.    **The Wilczaks' chapter 11 case**

While the state court appeal was pending, the Wilczaks filed a chapter 11 petition. They scheduled the Property, valued at $2.7 million, but stated that "note and deed of trust contain forged signatures" and disputed the amount owed.

BONY Mellon filed a timely proof of claim ("Claim") for the amount due under the note and deed of trust. It represented that the outstanding balance was $1,761,276 and that the loan was $443,085 in arrears.

4

## C. Objection to the Creditors' Claim

The Wilczaks objected to the Creditors' Claim ("Objection"). They argued that the Claim was invalid because the signatures on the loan documents were forgeries. They submitted a report from Nancy H. Cole, who examined the signatures and offered her opinion that the signatures were forgeries.

The Wilczaks moved for summary judgment on the Claim and Objection. They relied on Ms. Cole's report and argued that there was "no dispute" that the Creditors sought to enforce forged loan documents.

The Creditors objected to Ms. Cole's expert witness testimony, in part because the Wilczaks had failed to disclose her as an expert witness.

The Creditors filed their own motion for summary judgment, contending that the Wilczaks' arguments were barred by the *Rooker-Feldman* doctrine and preclusion principles, because the court had already ruled against the Wilczaks when granting the Creditors' motion to dismiss two years earlier.[4]

The bankruptcy court denied both motions. It also excluded Ms. Cole's expert report because the Wilczaks had failed to comply with Civil Rule 26's disclosure requirements.

---

[4] The Wilczaks had previously commenced an adversary proceeding that included an objection to the Claim. The bankruptcy court twice dismissed the complaint with leave to amend.

**D.     Trial on the Creditors' Claim and the Wilczaks' Objection**

The parties proceeded to trial on limited issues relating to the Claim and Objection. The court noted that it had already excluded direct evidence of experts. But it said that, assuming that Ms. Cole could qualify as an expert, it would allow her to testify as a rebuttal witness in response to the Creditors' evidence that the Wilczaks' signatures were genuine.

The court also stated that it had received an ex parte communication from the Wilczaks in which they apparently sought to terminate their attorney, Brian Elley. It cautioned the Wilczaks that, if they chose to terminate Mr. Elley, it would not continue the trial. After consulting each other in private, the Wilczaks opted not to discharge Mr. Elley.

The Wilczaks testified that the signatures on the loan documents were not theirs and they did not authorize anyone else to sign for them. They pointed out discrepancies in the dates of the documents, noted that names were misspelled and middle initials looked like they were added after the fact, and testified that the signatures did not look like their normal signatures. They testified that they never met a notary named Cindy North.

They stated that they attended a meeting at escrow to sign loan documents. They signed some of the documents but realized that the loan terms were different than what they had wanted. At that point, they stopped signing documents and walked out of the meeting.

The Wilczaks testified that the lender asked them to come back for

6

another meeting, at which the lender's representatives gave the Wilczaks a check for $354,000 and said they would send documents for them to sign. They admitted that they received a reconveyance of the deed of trust from the original lender in 2007. They also admitted that they made payments on the new loan and did not raise the issue of the alleged forgery until 2011.

Notary Cindy North testified that she did not have any independent recollection of notarizing the Wilczaks' loan documents in 2007, but stated that she would not have notarized the documents if the people purporting to be the Wilczaks had not presented her with the proper identification. She identified the entry in her notary book that showed that the Wilczaks had provided identification, signed the notary book, and marked the book with their thumbprints.

A litigation director at SPS also testified that SPS's payment history records for the Wilczaks' account showed that they paid the exact amounts due between September 2007 and June 2008.

The Wilczaks next offered the rebuttal testimony of their handwriting expert, Ms. Cole. Under voir dire examination by the Creditors, Ms. Cole testified that she retired in 2003 and had not thereafter obtained continuing education credits, published articles, taught classes, or been qualified as an expert.

The court ruled that it would not qualify Ms. Cole as an expert

witness. It noted that she had been retired for many years and was not active in her field. It stated:

> [T]he Debtors/Plaintiffs here have refuted that these are their signatures. There are obvious problems with the way the signatures look that even I can see, so I think on balance, her testimony, one, I don't think she qualified as an expert from what I've heard so far. Furthermore, I don't think that her testimony even if I did admit it would be beneficial to me which is the most elementary standard.[5]

### E. The bankruptcy court's decision

The bankruptcy court issued its order after trial, ruling in favor of the Creditors. It found that the Wilczaks had received the TILA disclosures and that the loan documents were genuine.

The court found that the signatures were not forged because "[s]ubtantial evidence supports a conclusion that Debtors signed the documents and performed under them for more than a year."

It found that the Wilczaks sought to refinance their existing loan in 2007. As a result of the refinancing, they received over $351,000 in cash, and the existing loan was paid off. It also found that they received regular monthly statements and for over a year made payments that corresponded with amounts listed in the TILA disclosure statement.

The bankruptcy court found that the timing of the forgery allegation

---

[5] After the court ruled, Ms. Cole corrected her earlier testimony and stated that she retired in 2013.

was suspect because it coincided with the start of the Creditors' foreclosure efforts. It also found that the Wilczaks wrote to Countrywide and Bank of America in 2009 to request modification of the loan. They referred to the loan as "our loan" and did not mention any forgery or hint that the loan documents were irregular.

The court also found that the Wilczaks' version of events was implausible and rejected Mr. Wilczak's testimony that they left the closing when they realized the loan terms were not what they had wanted. Rather, the court found more credible and convincing Ms. North's testimony that the Wilczaks had executed the documents as reflected in her notary book.

The bankruptcy court acknowledged that there appeared to be irregularities with the dates and signatures on the loan documents. However, it found that those irregularities did not necessarily indicate a forgery. The court found overall that "[t]he allegations are not credible in view of the facts" and concluded that the Wilczaks had not met their burden of proof regarding the Objection. It thus overruled the Objection and entered judgment for the Creditors.

The Wilczaks timely appealed.[6]

---

[6] The Wilczaks have filed multiple motions and additional documents and arguments for the Panel to consider, most of which were not submitted to the bankruptcy court and none of which are authorized by our rules. We will not consider these filings. *See Padgett v. Wright*, 587 F.3d 983, 986 n.2 (9th Cir. 2009) (per curiam) (stating that appellate courts "will not ordinarily consider matters on appeal that are not

(continued...)

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Whether the bankruptcy court erred in overruling the Objection.

(2) Whether the bankruptcy court erred in declining to accept expert testimony from Ms. Cole at trial.

(3) Whether Mr. Elley breached the "attorney-client relationship."

## STANDARDS OF REVIEW

We review a bankruptcy court's factual findings under the clearly erroneous standard. *See Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002) ("We review the bankruptcy court's conclusions of law de novo and its factual findings for clear error.").

Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead

---

(...continued)
specifically and distinctly raised and argued in appellant's opening brief"); *United Student Funds, Inc. v. Wylie (In re Wylie)*, 349 B.R. 204, 213 (9th Cir. BAP 2006) ("Absent exceptional circumstances, this court generally will not consider arguments raised for the first time on appeal." (citations omitted)).

10

fish." *Papio Keno Club, Inc. v. City of Papillion (In re Papio Keno Club, Inc.)*, 262 F.3d 725, 729 (8th Cir. 2001) (citation omitted). "Review for clear error is 'significantly deferential.'" *Roth v. Educ. Credit Mgmt. Corp. (In re Roth)*, 490 B.R. 908, 915 (9th Cir. BAP 2013) (quoting *Baker v. Mereshian (In re Mereshian)*, 200 B.R. 342, 345 (9th Cir. BAP 1996)). If two views of the evidence are possible, the court's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

"[W]e review a bankruptcy court's evidentiary rulings for abuse of discretion, and then only reverse if any error would have been prejudicial to the appellant." *Van Zandt v. Mbunda (In re Mbunda)*, 484 B.R. 344, 351 (9th Cir. BAP 2012), *aff'd*, 604 F. App'x 552 (9th Cir. 2015) (citing *Johnson v. Neilson (In re Slatkin)*, 525 F.3d 805, 811 (9th Cir. 2008)). "We afford broad discretion to a district court's evidentiary rulings . . . ." *Id.* at 352 (quoting *Harper v. City of L.A.*, 533 F.3d 1010, 1030 (9th Cir. 2008)).

To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262-63 & n.21 (9th Cir. 2009) (en banc).

## DISCUSSION

**A.    The bankruptcy court did not clearly err in finding that the signatures on the loan documents were not forgeries.**

The Wilczaks insist that they did not sign the loan documents and that their signatures are forgeries. They contend that Ms. North gave false testimony and that the court should not have believed her. Finally, they argue that the court found that the signatures were forgeries yet inexplicably concluded that the signatures were genuine and the documents enforceable. We have carefully reviewed the transcript and the court's ruling, and we find no reversible error.

First, the bankruptcy court properly weighed the conflicting evidence regarding the authenticity of the Wilczaks' signatures. When evaluating factual findings, "we give singular deference to a trial court's judgments about the credibility of witnesses. That is proper, we have explained, because the various cues that 'bear so heavily on the listener's understanding of and belief in what is said' are lost on an appellate court later sifting through a paper record." *Cooper v. Harris*, 137 S. Ct. 1455, 1474 (2017) (citations omitted). An attack on credibility determinations rarely succeeds, because "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually

never be clear error." *Anderson*, 470 U.S. at 575.

On the one hand, the bankruptcy court heard testimony from the Wilczaks that they did not sign the loan documents and that the signatures on the documents were not theirs. On the other hand, it heard testimony from Ms. North that she would not have notarized the loan documents unless the signatories had properly identified themselves as the Wilczaks.

The court simply found more plausible and persuasive the evidence offered by the Creditors. It found the Wilczaks' allegations "not credible," taking into account the suspect timing of the forgery claim, the payment on the refinanced loan, their correspondence acknowledging the loan, and the financial "impossibility" of the loan they claimed to have wanted. The court's decision to believe the Creditors' evidence was not clear error. *Id.* at 573-75.

The Wilczaks argue that the court contradicted itself because it once stated that the signatures were not genuine but then found that they were not forgeries. The Wilczaks misunderstand the court's first comment. In considering whether Ms. Cole's expert testimony would be helpful, it stated, "[t]here are obvious problems with the way the signatures look that even I can see[.]" It was merely stating that the Wilczaks' point about the signatures was obvious from the face of the documents and that the court did not need further expert testimony. It never made a finding of fact that the signatures were not genuine.

Moreover, the irregularities do not necessarily imply that the signatures were forgeries. The court found that an earlier loan application could explain the inconsistent date on the application, that the altered dates could have been a "clerical error" that someone corrected, and that the middle initials added to the signatures do not amount to a forgery. Rather, it found that, despite these irregularities, "substantial evidence . . . supports a conclusion that Debtors signed the Refinancing Documents." This finding is not illogical, implausible, or without support in the record.

Therefore, the bankruptcy court did not clearly err when it found that the Wilczaks failed to establish that their signatures on the loan documents were not genuine.

**B.    Even if the signatures were altered, the Wilczaks are not entitled to the relief they seek.**

The Wilczaks think that, if they establish that the signatures are forgeries, then the loan documents are void but they get to keep all of the loan proceeds. They are mistaken.

If the bankruptcy court had found that the loan agreement was procured by fraud, it could have rescinded the agreement. But this would merely restore the parties to their respective positions prior to the transaction:

> Rescission reverses the fraudulent transaction and returns the parties to the position they occupied prior to the fraud. It restores the status quo ante. Under true rescission, **the plaintiff**

14

**returns to the defendant the subject of the transaction,** plus any other benefit received under the contract, **and the defendant returns to the plaintiff the consideration furnished**, plus interest.

*Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1031 (9th Cir. 1999) (citing *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1342 (9th Cir. 1976) (Sneed, J., concurring)) (emphases added).

Similarly, assuming the bankruptcy court found that the Creditors had committed a TILA violation, the appropriate remedy would be rescission of the loan, which involves the borrower returning the loan proceeds: "Under a TILA rescission, the security interest is dissolved, **the lender returns the borrower's payments, and the borrower returns the loan proceeds**, less any 'finance or other charge.'" *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 702 (9th Cir. 1986) (citing 15 U.S.C. § 1635(b)) (emphasis added); *see Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1171 (9th Cir. 2003) ("rescission **should** be conditioned on repayment of the amounts advanced by the lender"); *LaGrone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir. 1976) (holding that district court erred in failing to condition rescission on borrower's tender of the net amounts advanced by lender).

Rescission of a contract does not mean that the victims get to keep the benefits of the contract while avoiding their obligations. In other words, even if we were to declare the loan documents invalid, the Wilczaks would not be entitled to retain the $1.3 million. *See Kratz v. Countrywide Bank*, Case

No. CV 08-01233 DSF(OPX), 2009 WL 3063077, at *5 (C.D. Cal. Sept. 21, 2009) ("The concept that a [borrower] is entitled to a free home or financial windfall because a creditor failed to check a box on a notice of right to rescind form is an irrational result that fails to recognize the full scope and policy behind the TILA's rescission framework." (quoting *Stanley v. Household Fin. Corp. (In re Stanley)*, 315 B.R. 602, 615 (Bankr. D. Kan. 2004)). The Wilczaks would be required to either return the $1.3 million (less the payments they made) or keep the $1.3 million but continue making payments to the Creditors, possibly under a reformed loan agreement.[7] In either case, they do not walk away with a free house.

At oral argument before the Panel, Mr. Wilczak shifted his position slightly. He argued that his and his wife's signatures were altered (when someone later inserted their middle initials) and that any alteration of the signatures rendered the loan documents unenforceable as a matter of law.

---

[7] A trial court might also find that the Wilczaks ratified the forged signatures by knowingly accepting the benefit of an allegedly fraudulent loan. "Ratification is the voluntary election by a person to adopt in some manner as his or her own an act that was purportedly done on his or her behalf by another person, the effect of which, as to some of all persons, is to treat the act as if originally authorized by him or her." *Estate of Stephens*, 28 Cal. 4th 665, 673 (2002) (citing *Rakestraw v. Rodrigues*, 8 Cal. 3d 67, 73 (1972)). An agent's act "may be adopted expressly or it may be adopted by implication based on conduct of the purported principal from which an intention to consent to or adopt the act may be fairly inferred." *Rakestraw*, 8 Cal. 3d at 73. "[I]t is well settled in California, 'that a principal may ratify the forgery of his signature by his agent.'" *Id.* at 74 (quoting *Volandri v. Hlobil*, 170 Cal. App. 2d 656, 659-660 (1959)). But the bankruptcy court did not consider or rule on this matter, so neither do we.

He did not cite any legal authority for this position, and we are not aware of any.

## C. The bankruptcy court did not err in rejecting Ms. Cole's expert testimony.

The Wilczaks argue that the court should have considered Ms. Cole's expert report and testimony. We disagree.

Federal Rule of Evidence 702 provides that an expert witness may offer her opinion if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]" Fed. R. Evid. 702(a). "[T]he trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (citation omitted).

Thus, this rule imposes a two-pronged test: (1) the proffered witness must have "specialized knowledge"; and (2) the proffered testimony must be helpful. The bankruptcy court decided that neither prong was met. First, the court observed that the witness's qualifications were stale; in other words, that she no longer had sufficient specialized knowledge. Second, the court noted that the features of the signatures that the witness pointed out were obvious to the court without the assistance of an expert; in other words, that her testimony would not have been helpful to the fact finder.

The bankruptcy court did not abuse its discretion in making these rulings.

There is an additional procedural requirement for expert testimony. Civil Rule 26(a)(2), made applicable in adversary proceedings by Rule 7026, requires certain pretrial disclosures about experts. The bankruptcy court ruled, before the trial, that the Wilczaks had not timely made the required disclosures about Ms. Cole. Thus, the bankruptcy court acted within its permitted discretion when it declined to receive her report and allowed the Wilczaks to offer her only as a rebuttal witness.

## D.    The "attorney-client relationship" is not relevant to this appeal.

Finally, the Wilczaks make a number of attacks against their own attorney, Mr. Elley. None of these arguments warrants any relief on appeal.

They generally argue that Mr. Elley violated the "attorney client relationship" by declining to present or highlight certain aspects of their case or refusing to undertake the discovery they wanted. They imply that he made these decisions because he "sustained severe head trauma."[8]

These arguments are meritless. Any problems with their "attorney-client relationship" with Mr. Elley have no bearing on the court's decision to overrule the Objection. Our review of the record indicates that Mr. Elley represented the Wilczaks capably. Further, there is no right to counsel in bankruptcy proceedings, much less a guaranteed right to effective counsel.

---

[8] Mr. Elley had stated during the trial that he suffered a fractured skull. There was no indication that his physical condition affected his mental processes.

*Chunchai Yu v. Nautilus, Inc. (In re Chunchai Yu)*, BAP No. CC-16-1045-KuFD, 2016 WL 4261655, at *7 (9th Cir. Aug. 11, 2016), *aff'd*, 694 F. App'x 542 (9th Cir. 2017).

The Wilczaks further claim that the court refused to listen to evidence of their "problematic" attorney-client relationship and advised them not to terminate Mr. Elley. They allege that the court violated their right to due process and equal protection.

The bankruptcy court did not deprive the Wilczaks of due process. Rather, it cautioned Mr. Wilczak not to inadvertently disclose privileged communication or strategy such that he waived the attorney-client privilege. Nor did it compel him to retain Mr. Elley; the court explained the Wilczaks' options, and Mr. Wilczak opted for "No termination."

Finally, we will not consider any new evidence that the Wilczaks failed to present at trial. *In re Wylie*, 349 B.R. at 213.

## CONCLUSION

The bankruptcy court did not err. We AFFIRM.